**UNITED STATES of America, Plaintiff,**

v.

**Michael GARAFOLA and John Dolan, Defendants.**

**Crim. No. 77–1.**

United States District Court,
D. New Jersey.

March 18, 1977.

Joseph H. Burns, Asst. U.S. Atty., Newark, N.J., for plaintiff.

Samuel R. DeLuca, Jersey City, N.J., for defendants.

## OPINION

LACEY, District Judge.

The problems which can result from indifference to the biblical teaching that "no man can serve two masters,"[1] transposed into an attorney's joint representation of two defendants, have now emerged in this matter.

Jointly charged under 18 U.S.C. § 659 (1976), in a one-count indictment, with unlawful possession of chattels stolen from foreign commerce, Michael Garafola and John Dolan were arraigned in this district on January 14, 1977. Each entered a plea of not guilty. Because they were represented by the same attorney, my colleague, Judge Herbert J. Stern, presiding at arraignment, conducted a *United States ex rel. Hart v. Davenport*[2] hearing. Responding to his questions, defendants and their attorney stated that there was no conflict of interest between the defendants; and the defendants, notwithstanding Judge Stern's advice on their right to separate legal representation, announced that they desired to continue to be represented by

1. *Matthew* 6:24.

2. 478 F.2d 203 (3d Cir. 1973). No transcript was prepared; that there was such a hearing, however, is undisputed. *See also United States v. Mari*, 526 F.2d 117 (2d Cir. 1975); *United States v. DeBerry*, 487 F.2d 448 (2d Cir. 1973);

*United States v. Alberti*, 470 F.2d 878 (2d Cir. 1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973); ABA Standards Relating To The Function of the Trial Judge, § 3.4(b), at 11, 44 (Approved Draft 1972).

their jointly retained attorney there present.[3]

On the day of trial, just before jury selection, defendants' counsel advised me that one of his clients, Garafola, had decided to retract his not guilty plea and plead guilty to the charge. A Rule 11, Fed.R.Crim.P., proceeding followed, at which Garafola, in open court, under oath and with counsel present, admitted his guilt in terms which enabled me to find a basis in fact for the guilty plea, which was then and there accepted; and a sentencing date was then set.

Prior to commencement of the Rule 11 proceedings, I had conducted another *Davenport* hearing. Again, Garafola and Dolan, and their attorney, all flatly stated that there was no conflict of interest; and both Garafola and Dolan reiterated that they wanted the same attorney to continue to represent both of them.

Following the entry of Garafola's guilty plea, the trial commenced against Dolan. The government's testimony, in summary, was that Garafola and Dolan, as railroad co-workers, had been arrested by a railroad detective while in the act of removing stolen television sets from an abandoned trailer, described by a government witness as a "well-known stash." One government witness testified that, an instant before the arrest, Dolan had picked up from the floor of the "stash," one of the stolen sets.

Following my denial of his motion for judgment of acquittal, Dolan took the stand as the first witness in his own defense. He testified that he was in the abandoned trailer and was about to pick up a television set to remove it therefrom when he was placed under arrest. He denied knowing that the set was stolen. He was, he said, simply assisting Garafola, who had asked Dolan to help him, Garafola, "get the television sets back." It was obvious from the testimony thus presented that Dolan's defense would be that, while he may have possessed the stolen property, he lacked that state of mind requisite for guilt under 18 U.S.C. § 659. The trial day ended while Dolan was on cross-examination.

Upon the resumption of trial the next day, I conducted a further inquiry into the conflict of interest problem. Dolan's attorney stated that he saw no ethical impropriety in his representation of Garafola and Dolan, before or during trial; that Garafola could in fact exculpate Dolan; but that he had decided not to call Garafola as a witness because he would not make a "good" impression.

The government, on the other hand, indicating that it was going to call Garafola as

---

**3.** New Jersey Disciplinary Rule DR 5–105 provides:

> *Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.*
>
> (A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).
>
> (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).
>
> (C) In situations covered by DR 5–105(A) and (B) except as prohibited by rule, opinion, directive or statute, a lawyer may represent multiple clients if he believes that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the facts and of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.
>
> (D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

*See also* Canon 6 of the American Bar Association's Canons of Professional Ethics ("Adverse Influences and Conflicting Interests"); American Bar Association, Code of Professional Responsibility, Canon 5 ("A Lawyer Should Exercise Independent Professional Judgement on Behalf of a Client"); *and see* Local Rule 6 of the United States District Court for the District of New Jersey ("the Code of Professional Responsibility, adopted by the American Bar Association, shall govern the conduct of . . . the members of the Bar admitted to practice in this court.")

a rebuttal witness, had him in court under subpoena. I asked defense counsel what he intended to do when Garafola was called. He responded that he did not think that Garafola should testify, having not yet been sentenced, particularizing that Garafola would doubtless consult him about his, Garafola's, rights, and that he would advise Garafola of his fifth amendment privilege against compulsory self-incrimination.

I then inquired of counsel whether any advice he now gave Garafola would be rendered by his acting solely in Garafola's interest, or would be influenced, even slightly, by his continuing representation of Dolan. Indeed, I found it further of interest to speculate on how, if Garafola, contrary to his counsel's advice, decided to testify, the latter could cross-examine Garafola while still representing him in connection with the upcoming sentence. Counsel responded by stating that he still perceived no conflict of interest between Garafola and Dolan and saw no reason why he could not continue to represent Dolan effectively.

█ Because I am granting defendant's motion for mistrial for reasons unconnected with the issue of joint representation, I have the opportunity of implementing and enforcing what I regard, under the circumstances, as the appropriate standard of legal representation in a criminal case. I find that present counsel cannot effectively represent both Garafola and Dolan, and I am directing that he withdraw from representing either of them. Counsel and the two defendants are to appear before me on a date to be set, at which time the matter of future legal representation will be resolved.[4]

What has occurred requires comment. The trial judge is placed in a difficult position when, at arraignment, he is confronted with joint representation by defendants' counsel. The *Davenport* inquiry, by and large, is an ineffective charade. The judge and counsel know the purpose of the inquiry: to forestall a convicted defendant from later successfully urging on appeal that he did not at trial have effective assistance of counsel. Put in other words, it is done to construct a predicate for claiming later that there has been a waiver of a constitutional right. For reasons I shall explicate, it fails utterly as a means of assuring an informed consent from jointly represented—and unsophisticated—defendants.

In the recently decided *Matter of Grand Jury Empaneled January 21, 1975*, 536 F.2d 1009 (3d Cir. 1976), the court of appeals stated that, as is the case with other constitutional rights, "the *Davenport* right may be waived." *Id.* at 1012. The court went on to find that "a waiver is exactly what the district court elicited from each of the appellants at the hearings conducted in this case." *Id.*[5] With all deference, I question whether there can be a waiver in the *Johnson v. Zerbst* sense.[6]

Many trial judges are concerned about the ability and capacity of any defendant knowingly and intelligently to waive his sixth amendment right to the effective assistance of counsel within the context of a *Davenport* inquiry into joint representation. The average defendant cannot possibly understand fully and completely the extent to which his counsel's trial strategy may be affected by his representation of other defendants. Moreover, what of the situation,

---

4. On March 15, 1977 counsel appeared before me to state that Garafola was obtaining new counsel but that Dolan continued to want present counsel to represent him. I advised counsel that I am adhering to my original ruling.

5. Other circuits have also adopted the principle that effective assistance of counsel can be waived in a joint representation situation. *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), after holding "defendants may waive the

right to conflict-free assistance of counsel," detailed the procedure a trial judge should follow in advising "of the potential dangers of representation by counsel with a conflict of interest." *Id.* at 277–78. Cf. *In re Investigation Before April 1975 Grand Jury*, 174 U.S.App. D.C. 268, 531 F.2d 600 (1976). *See also United States v. Carrigan*, 543 F.2d 1053 (2d Cir. 1976).

6. 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

not uncommon, where a "strong defendant" thrusts his own attorney upon a "weak" co-defendant? The latter does not dare indicate his displeasure with the joint representation. In simple terms, the *Davenport* inquiry, to the extent it is directed at the defendants, is a futile exercise. There can be no real waiver.[7]

Respectfully it is submitted that the trial judge cannot conduct a meaningful inquiry. He does not know the case. He cannot know the facts or the inferences which may be fairly drawn from them. He is unaware of the quality of the witnesses and the trial strategy the government and the defendants will pursue. Nor can he inquire into the defense without violating defendant's fifth and sixth amendment rights; and this is so whether the interrogation is held in open court or *in camera*. He is restricted to imparting vaguely contoured, abstract advice on a doctrine as to which the lawyer then and there present has undoubtedly already advised his clients. Indeed, the attorney's words will have more meaning to the defendants because they are not empty abstractions but related to the facts of the

case. He has already told his clients that there is no conflict in their interests. Thus, when the defendants answer the court's inquiry, they actually are relying upon the advice received from their lawyer. If he tells them there is no conflict and that he can effectively represent them, how can their responses to the court be deemed to amount to a *Johnson v. Zerbst* waiver of their sixth amendment right to effective aid of counsel? Cf. *Fay v. Noïa*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[8]

■ The reasoning supporting the "waiver" doctrine in this context of joint representation seemingly is founded upon an analysis of the sixth amendment from which there emerges the concept that, because there is a right to waive counsel altogether, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), there is also a right to waive effective assistance of counsel. Like so many seemingly simple truths, this one has its frailties. The absolute, that is, counsel or none, as is so often the case, is easier to define and deal with than the relative, that is, is one counsel or another better able to represent

7. In a paper adapted from a speech given at the National College of Criminal Defense Lawyers and Public Defenders in Houston, Texas, on June 24, 1976, Alan Y. Cole, Esq., Chairman of the Section of Criminal Justice, American Bar Association, has stated, after discussing the Third Circuit [536 F.2d 1009 1976)] and District of Columbia Circuit [531 F.2d 660 (1976)] cases,

This is a dismal scene. The attorney conduct involved in these cases is hardly of a nature that enhances the image of the profession. It does not reflect respect for the principles underlying the canon of ethics. It suggests that self-regulation by the profession is essentially non-existent. The judicial response is likewise unsatisfactory to a society which is already disenchanted with its lawyers and its courts.

Cole, Time For a Change: Multiple Representation Should be Stopped 9–10 (unpublished) (footnote omitted).

I do not join in Mr. Cole's pungent criticism of the bar and bench; however, it is deserving of reflection that a leading member of the bar, active in the defense of criminal cases, finds the situation warrants such candid comment.

8. *See* Circuit Judge Lumbard's concurrence in *United States v. Carrigan, supra*, note 4, at 1058:

It would be a rare defendant who could intelligently decide whether his interests will be properly served by counsel who also represents another defendant. However parallel his interests may seem to be with those of a co-defendant the course of events in the prosecution of the case, the taking of a guilty plea, or the conduct of the trial may radically change the situation so as to impair the ability of counsel to represent the defendant most effectively. Even defense counsel, who all too frequently are not adequately informed regarding the evidence available against their clients, may not be in a position to judge whether a conflict of interest between their clients may develop.

Even when the government is compelled to outline its prospective proofs, the problem remains. Cf. *Abraham v. United States*, 549 F.2d 236 (2d Cir. filed January 21, 1977), a proceeding brought under 28 U.S.C. § 2255, challenging, on deprivation of effective assistance of counsel grounds, a conviction upheld in *United States v. Sisca*, 503 F.2d 1337 (2d Cir.), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). In *Abraham* the Court of Appeals details and approves District Judge Bryan's joint representation inquiry. 549 F.2d 238–239.

the defendant. A trial judge can quite readily advise a defendant on the wisdom of proceeding with counsel, the bases for his advice and the pitfalls which a defendant will encounter absent counsel. On the other hand, in view of the limitations already alluded to in this opinion, the joint representation inquiry falls far short of assuring a knowing and intelligent waiver. *Cf. United States v. Paz-Sierra,* 367 F.2d 930, 932 (2d Cir. 1966).

The efficacy of a trial judge's joint representation inquiry is largely a function of how the attorney views his role. As I have stated, the responses of the jointly represented defendants will in reality be their attorney's response. Predictably, once they state there is no conflict, and that they desire his continued representation, he too will advise the court there is no conflict in his representing the two or more defendants involved.

Clearly, then, it is primarily, if not exclusively, the responsibility of the attorney to avoid joint representation which has any possibility, no matter how remote, of a conflict of interest. If he is representing

> multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment [and he is to] resolve all doubts against the propriety of the representation.

Code of Professional Responsibility, Ethical Consideration 5–15.

See also ABA Standards Relating To The Defense Function, § 3.5(b), at 159, 211 (Approved Draft 1971), which state that the

> potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.

The next question to be put is whether joint representation should be allowed, no matter how remote the possibility of a potential conflict of interest. Unfortunately, no matter how thorough an attorney's investigation, he may not be aware of those facts which suggest the possibility of a conflict. As was stated by Judge Lumbard, concurring in *United States v. Carrigan,* 543 F.2d 1053, 1058 (2d Cir. 1976):

> It is a rare defendant in a criminal case who fully advises his own counsel of all he knows about the charges against him. Accordingly, most counsel must operate somewhat in the dark and feel their way uncertainly to an understanding of what their clients may be called upon to meet upon a trial. Consequently, counsel are frequently unable to foresee developments which may require changes in strategy.
>
> It follows that there will be cases where the court should require separate counsel to represent certain defendants despite the expressed wishes of such defendants. Indeed, failure of the trial court to require separate representation may, in cases such as this, require a new trial, even though the defendants have expressed a desire to continue with the same counsel. The right to effective representation by counsel whose loyalty is undivided is so paramount in the proper administration of criminal justice that it must in some cases take precedence over all other considerations, including the expressed preference of the defendants concerned and their attorney.
>
> Our burgeoning criminal calendars and the need to try a larger percentage of criminal cases under the provisions of the Speedy Trial Act and court rules for the prompt disposition of criminal cases have made it all the more necessary for our federal trial courts to take all measures to avoid the necessity for the retrial of multi-defendant cases. One such measure is to require separate counsel for each defendant in a multi-defendant case.

*See also United States v. Mari,* 526 F.2d 117, 119–21 (2d Cir. 1975) (Oakes, C. J., concurring).

That there is much wisdom in the suggestion made by Judge Lumbard that there be "separate counsel for each defendant in a multi-defendant case" (543 F.2d at 1058) is further underscored by the fact that it is not possible to "anticipate with complete accuracy the course that a criminal trial may take." *Fryar v. United States,* 404 F.2d 1071, 1073 (10th Cir. 1968), *cert. denied,* 395 U.S. 964, 89 S.Ct. 2109, 23 L.Ed.2d 751 (1969), which also notes "the practical difficulty for a trial judge to determine the existence of a conflict of interest between co-defendants without encroaching upon the fifth amendment." *Id.*

*See also* American Bar Association Standards Relating to the Defense Function, *supra,* at 214:

> the risk of an unforeseen and even unforeseeable conflict of interest developing is so great that a lawyer should decline multiple representation unless there is no other way in which adequate representation can be provided to the defendants.

■ While it may be contended that what amounts to a *per se* rule barring joint representation in a criminal case intrudes upon a defendant's right to choose his own counsel, it is well established that the right is not an absolute one. Indeed, *Matter of Grand Jury Empaneled January 21, 1975, supra,* 536 F.2d at 1012, indicated "without deciding" that, in the context of grand jury representation

> the government may obtain, in appropriate circumstances, judicial interference with private arrangements for multiple legal representation of witnesses called to testify before a grand jury, on the theory

that the multiple representation impedes the effectiveness of the grand jury investigation.

*Cf. In re Gopman,* 531 F.2d 262, 268 (5th Cir. 1976); *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896, 900–05 (1975), *appeal dismissed and cert. denied,* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976).[9]

■ The trial judges are in need of guidance in this delicate and sensitive area.[10] Until it is forthcoming in the form of a rule of the Supreme Court,[11] or a directive from our court of appeals in the exercise of its supervisory power, it would seem that no case of joint representation should be permitted unless counsel can state that he knows all of the facts of the defense; that he is totally aware of the government's case; that there is absolutely no possibility, however remote, of a conflict arising in his joint representation of the defendants; and that his analysis and response are made with a total understanding of the canons and rules applicable to attorneys engaged in joint representation of defendants in a criminal case.

■ Should it later develop, as the proceeding moves to trial, that counsel has misstated the situation, disciplinary measures should be pursued by the offended trial judge.

It follows that the same rule should apply where one or all of the jointly represented defendants intends to, or does, plead guilty. As Circuit Judge Oakes stated in his concurrence in *United States v. Mari, supra,* 526 F.2d at 120:

9. *See* the Criminal Justice Act, 18 U.S.C. § 3006A(b): "The United States magistrate or the court shall appoint separate counsel for defendants having interests that cannot properly be represented by the same counsel. . . ." The District of Columbia Circuit, recognizing that "the burden placed on the trial judge by the Act, to decide before trial whether separate counsel for co-defendants are required, is an exceedingly onerous one," requires that separate counsel be appointed for each defendant initially. *Ford v. United States,* 126 U.S.App. D.C. 346, 379 F.2d 123, 125–26 (1967). Counsel have the right later to apply to the court to allow joint representation. *Id.*

10. *In Matter of Grand Jury Empaneled January 21, 1975, supra,* the court referred to the trial judge's barring of an attorney's joint representation of nine grand jury witnesses as "draconian," 536 F.2d at 1012, meaning, of course, harsh, severe, or rigorous.

11. The Supreme Court Advisory Committee on Criminal Rules is presently considering a rule requiring judicial inquiry into joint representation.

The problem is that even where as here both codefendants pleaded guilty there are frequently potential conflicts of interest. . . . [T]he prosecutor may be inclined to accept a guilty plea from one codefendant which may harm the interests of the other. The contrast in the dispositions of the cases may have a harmful impact on the codefendant who does not initially plead guilty; he may be pressured into pleading guilty himself rather than face his codefendant's bargained-for testimony at a trial. And it will be his own counsel's recommendation to the initially pleading co-defendant which will have contributed to this harmful impact upon him. . . . [I]n a given instance it would be at least conceivable that the prosecutor would be willing to accept pleas to lesser offenses from two defendants in preference to a plea of guilty by one defendant to a greater offense.

Moreover, the aforesaid rule is also called for when the joint representation comes about by virtue of each defendant being represented by attorneys associated with each other in practice. *See* Code of Professional Responsibility (New Jersey Disciplinary Rule) DR 5–105(D), n. 3, *supra*.

■ A suggested form to be signed by counsel who jointly represents multiple defendants in a criminal case is annexed as Appendix A to this opinion. The judge, of course, is not relieved thereby of making the *Davenport* inquiry.

In conclusion, it is appropriate to quote again from the earlier cited paper by Mr. Cole:

Reliance upon the right to select counsel is not a very persuasive factor in this context. There are more than enough good defense lawyers to go around. Though multiple representation does permit some saving in fees, it does not appear that this factor is the principal motivation in the many cases in which this conduct occurs.

A more realistic analysis of these situations suggests that multiple representation is more often prompted by the desire to keep certain persons in "friendly" hands. What better way can there be for an attorney to learn what a witness or codefendant will say or do than by representing such a person? Indeed, by representing him, an attorney not only will *know* what he will say or do; he will even be able to guide him. Such a witness will remain "friendly," because his attorney will keep him that way.

This may be advantageous to the attorney's principal client, but is it fair to the other clients? Will an attorney who is representing multiple defendants be as aggressive in seeking a plea bargain for Client No. 2 as he would be if Client No. 2 was his only client? Would he even consider obtaining a grant of immunity for Client No. 3 when that client's testimony might affect the destinies of Clients Nos. 1 and 2? Because conflict is generally inherent in any criminal proceeding involving multiple defendants, it is generally impossible for one lawyer zealously to represent more than one client in any such proceeding. To avoid the Scylla of conflict, the defense attorney with multiple clients will likely become engulfed in the Charybdis of ineffective assistance of counsel.[12]

As I have already noted, I regard it highly significant that a leading member of the criminal defense bar would regard the matter of joint representation in criminal cases as requiring presently that he express himself in such critical terms. It would seem that the time is at hand when serious consideration must be given to the issues raised by this case. The responsibility lies with bench and bar alike.

Reverting to the specific issue raised herein by Garafola's decision now to retain

---

12. Cole, *supra,* note 6, at 12–13 (footnote omitted).

*Cf.* Morgan, *The Evolving Concept of Professional Responsibility,* 90 Harv.L.Rev. 702, 727–28 (1977).

separate counsel, the position of conflict in which defense counsel knowingly placed himself from and after arraignment continues to persist. This is so for several reasons. Simply by way of example, should Garafola be called as a witness by the United States upon re-trial, how can he be cross-examined effectively by his former attorney without intruding into matters protected by the attorney-client privilege.[13] Moreover, what is to be done if Dolan wishes to waive the attorney-client privilege but Garafola does not? What is present counsel then to do? A myriad of equally complex questions are presented, simply because counsel did not, when he first ascertained all of the facts of the case, exercise that prudence which was required. Accordingly, I adhere now to my ruling of March 10, 1977, and order that Dolan retain new counsel to represent him at re-trial.

### APPENDIX A

I, _____ a member of the Bar of _____, appear to represent jointly the following defendants:

1.
2.
3.

etc.

I have thoroughly investigated the facts of this case and am aware of the facts as they will affect each of the defendants I represent. I have also considered what the theory of the United States may be in the prosecution of this case, the witnesses it may call, and the trial strategy I will follow.

Moreover, the foregoing elements have been considered in the light of the ethical considerations presented by the New Jersey Disciplinary Rules, including but not limited to DR5–105, the Canons of Professional Ethics, and the American Bar Association's Standards Relating to the Defense Function, including but not limited to § 3.5, and the commentary thereto.

I represent to the court that, having given full consideration to the foregoing, I am certain that there is no conflict in interest between the defendants I represent.

I recognize that should later events disclose that my assessment of the matter of conflict-in-interest was in error, I may be subject to court-imposed or other sanctions as may be deemed appropriate under the circumstances.

I further state to the court that I have conferred with each of my clients, discussed with them the facts of the case, their own status alone and as it may be affected by the status of the others I represent, and the trial strategy I plan to pursue, including the witnesses I plan to call. I have also advised them of their right to separate counsel; however, I have advised them that I presently perceive no conflict in the interest of any one defendant as against any other defendant jointly represented by me.

ATTORNEY FOR THE DEFENDANT

Dated:

---

13. *See* Transcript of hearing held in chambers on March 10, 1977, at 16.