Virgil MANN *v.* Henry M. BRITT, Judge

CR 79-46

583 S.W. 2d 21

Opinion delivered June 25, 1979
(In Banc)

*George M. Callahan,* for petitioner.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Asst. Atty. Gen., for respondent.

GEORGE ROSE SMITH, Justice. In June, 1978, the

Garland county grand jury returned indictments charging the petitioner, Virgil Mann, and three co-defendants with various counts of public servant bribery, theft, conspiracy to commit theft, and obtaining money under false pretenses. Mann's co-defendants were M. B. "Rip" Evans, Jeanette Evans, and Rip Evans Construction Company, Inc. All the defendants pleaded not guilty. At first Mann and his three co-defendants were all represented by George M. Callhan, a lawyer who had previously represented Mann and Rip Evans in other matters. In November, however, the three co-defendants, at the suggestion of the circuit judge, obtained independent counsel. In January, 1979, pursuant to a plea bargain, Rip Evans and his corporation changed their pleas to guilty, and the charges against Mrs. Evans were dismissed. As part of the plea bargain Rip Evans agreed to testify against Mann.

In February the circuit court conducted a hearing upon a motion by Evans asking the court to admonish Mr. Callahan not to divulge, through cross-examination or otherwise, any information which Mr. Callhan had received from the Evanses during their attorney-client relationship, and upon a motion by the State to disqualify Mr. Callahan from continuing to act as Mann's attorney in the cases. The circuit judge ruled that Mr. Callahan should be disqualified from further representation of Mann in the pending cases and that Mann should obtain other counsel for the trial, which was tentatively set for February 27. Mr. Callahan, as Mann's attorney, then applied to this court for a writ of prohibition to prevent the circuit court from proceeding with the cases pursuant to its ruling that Mr. Callahan was disqualified to act as defense counsel. We issued a temporary writ of prohibition to stay the proceedings until the matter could be submitted to this court on briefs, which has been done.

The indictments have not been made exhibits to the petition for prohibition, which with its exhibits is the record in this court. Supreme Court Rule 16 (a). We can, however, infer the nature of at least part of the charges from the testimony given by Rip Evans at the hearing at which the court approved his plea bargain with the prosecuting attorney. Evans testified that Mann, a street commissioner (presumably of the city of Hot Springs), had stated that he

was in need of money. As we understand Evans's testimony, Mann prepared fraudulent purchase orders, running to thousands of dollars, by which the city was ostensibly to purchase oil from Evans or his company. The city issued its checks to Evans or the company for the various purchases. Evans, without delivering the oil to the city, turned the money over to Mann, after retaining enough to pay Evans's federal income taxes on the transactions. Thus, according to Evans, Mann was the conspirator who actually profited from the transactions.

We hold that the circuit judge did not abuse his discretion in disqualifying Mr. Callahan from further participation in the cases. In reaching this conclusion we emphasize the apparent impropriety of Mr. Callahan's original attempt to represent all four defendants. We note in passing that Mr. Callahan does not seem yet to have conceded even the possibility of impropriety on his part. He says, for example, in his type-written brief seeking a temporary writ of prohibition that no conflicts between the defendants arose during the time that he was representing them, that the conflicts arose only after three of them had obtained separate counsel. Again, Mr. Callahan says in his printed brief, with respect to the hearing at which the trial court imposed the disqualification: "There was no showing in the hearing that the interest of Co-Defendants, Mann and Evans, was not similar or that any defenses asserted by one would be inconsistent with that interposed by the other."

On the record before us, which is all that the petitioner has submitted, we think the potential conflict between Evans and Mann was strikingly apparent from the outset. The two were jointly accused of public servant bribery. The human tendency of co-defendants to seek leniency for themselves by casting the primary blame on each other is well known. In fact, that tendency underlies our long-standing rule that the testimony of an accomplice must be corroborated. Here, as might have been foreseen, Evans, who apparently had received the city's checks, attempted to shift the blame to Mann by testifying that it was Mann who proposed the scheme and actually profited by it. Furthermore, Evans, within a few weeks after engaging independent counsel, elected to plead guilty

and agreed to testify against Mann. That turn of events, in a case involving alleged joint complicity, cannot be regarded as unforeseeable.

Mr. Callahan, primarily as defense counsel but also simply as a practicing attorney, was under a clear-cut obligation to anticipate the possibility of a conflict between the interests of his several clients. We discussed the point to some extent in *Chambers v. State,* 264 Ark. 279, 571 S.W. 2d 79 (1978):

> We have no doubt at all about Larry's having been entitled to independent counsel. The duty of a lawyer in Mr. Etoch's position is clearly stated in the ABA Standards Relating To the Defense Function, § 3.5 (b) (1971):
> "Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation."
> See also the Code of Professional Responsibility, Canon 5 (1975).

The ABA Standards Relating To the Defense Function again emphasize the point in the commentary to § 3.5 by pointing out that "the risk of an unforeseen and even unforeseeable conflict of interest developing is so great that a lawyer should decline multiple representation unless there is no other way in which adequate representation can be provided to the defendants." See also the extended quotation from an unpublished article by Alan Y. Cole in the court's opinion in *United States* v. *Garafola,* 428 F. Supp. 620 (D.C.N.J. 1977).

We do not mean that Mr. Callahan's ill-considered decision to attempt to represent both Mann and Evans is in itself a complete answer to Mann's insistence that he is still entitled to be represented by Mr. Callahan as the counsel of his choice. Nevertheless, the rights of an accused to "the assistance of counsel" as guaranteed by the Sixth Amendment to the United States Constitution and to be heard "by himself and his counsel" as guaranteed by Article 2, § 10, of the Arkansas Constitution do not confer an absolute choice of counsel, regardless of the circumstances. As the court said in *Gandy* v. *State of Alabama*, 569 F. 2d 1318 (5th Cir., 1978):

> [N]ot all the variations of the right to counsel are absolute values. Indeed, it is a settled principle that the right to counsel of one's choice is not absolute as is the right to the assistance of counsel. [Citations.]
> The right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.

Similarly, an indigent defendant does not have an absolute right to demand the services of any lawyer he chooses. *Thomas* v. *State*, 584 P. 2d 674 (Nev., 1978).

The question is whether Mr. Callahan's continued representation of Mann can be permitted without any substantial possibility of prejudice either to Evans or to the State. We cannot say with confidence that such a possibility does not exist.

Counsel for Evans make the point that there were many confidential communications between their client and Mr. Callahan before that attorney-client relationship terminated. That confidential information, it is argued, might be used by Mr. Callahan to Evans's disadvantage, such as with regard to extraneous matters going to his credibility, if Callahan were permitted to cross-examine Evans. We do not regard Mr. Callahan's suggestion that Mann be allowed to employ still another lawyer to cross-examine Evans as being a practical or satisfactory solution to a problem that arose only as a result of Mr. Callahan's initial attempt to represent multiple defendants with potentially conflicting interests. Furthermore,

counsel for the State make the point that Evans could hardly be cross-examined without the possibility of frequent interruptions in the trial, with attendant in-chambers hearings, whenever questions about confidentiality arose. In fact, just such a difficulty arose at a hearing below with respect to Evans's change of plea, when Mr. Callahan asked Evans, on cross-examination, if he had not agreed in the first place that his interests and those of Mann were similar. The question was objected to, as involving the disclosure of a confidential communication, and led to a protracted argument between opposing counsel. The difficulty is basic. There is simply no way of determining whether a communication was confidential without first violating its confidentiality. See *Holloway* v. *Arkansas*, 435 U.S. 475 (1978).

The point was discussed in *United States v. Garafola, supra.* There Garafola and Dolan, co-defendants in a prosecution for possession of stolen property, were at first represented by the same attorney. On the day of trial Garafola decided to change his plea to guilty, and eventually he retained separate counsel. The court later held that the defendants' original attorney was disqualified from continuing to represent either Garafola or Dolan, pointing out some of the same difficulties that may arise in the case at bar:

> Reverting to the specific issue raised herein by Garafola's decision now to retain separate counsel, the position of conflict in which defense counsel knowingly placed himself from and after arraignment continues to persist. This is so for several reasons. Simply by way of example, should Garafola be called as a witness by the United States upon re-trial, how can he be cross-examined effectively by his former attorney without intruding into matters protected by the attorney-client privilege. Moreover, what is to be done if Dolan wishes to waive the attorney-client privilege but Garafola does not? What is present counsel then to do? A myriad of equally complex questions are presented, simply because counsel did not, when he first ascertained all of the facts in the case, exercise that prudence which was required. Accordingly, I adhere now to my ruling of

March 10, 1977, and order that Dolan retain new counsel to represent him at re-trial.

See also *United States v. Lawriw*, 568 F. 2d 98 (8th Cir. 1977), where the court recognized the possibility that, as in *Garafola*, it may sometimes be necessary to disqualify counsel from representing either of two defendants.

In discussing only what is actually the primary issue in this application for a writ of prohibition, we do not overlook counsel's reliance upon six separate points in his brief. All of them, however, derive essentially from the main issue. That Mann did not receive specific notice that the State's motion to disqualify counsel would be presented at the hearing below did not result in a denial of due process, as the court had already indicated that Mr. Callahan's disqualification would be at issue; so there was no want of notice or of an opportunity to be heard.

Writ denied.

BYRD and PURTLE, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I respectfully dissent from the majority opinion in this case. Although it is impractical to set out all the pleadings and evidence in an opinion, the majority here failed to point out that petitioner specifically waived any prejudice which might come to him by the use of Mr. George M. Callahan, the counselor of his own choosing. The opinion further fails to point out that the other two defendants, at the urging of the trial court, obtained the services of two prominent attorneys who represented both of the other defendants. Further, the opinion fails to point out that these prominent attorneys agreed they would have no objection to the petitioner continuing with the services of George M. Callahan as his attorney provided another attorney cross-examined Mr. Evans when he turned state's evidence against the petitioner.

The majority are, in my opinion, inadvertently condoning the procedure of allowing trial courts to unduly restrict an accused in freely selecting an attorney of his choice.

Neither this Court nor any other court has any right to determine whether an attorney will represent a particular client so long as the selected attorney is authorized to practice law in Arkansas.

The majority designates Callahan's decision to represent all three defendants as ill-considered. Perhaps this is so but it might not be if under the advice of Mr. Callahan all three defendants had elected to claim their immunity under the 5th Amendment of the Constitution of the United States. It is possible that the state in this particular case might have been unable to prove their allegations without the cooperation of one of more of the original defendants. In such case we would afterwards characterize Callahan's tactics as brilliant. Not being possessed with clairvoyant powers, I am unable to make the decision which my brothers pronounced this date.

I will admit that it is usually not wise for any attorney, or firm of attorneys, to attempt to defend more than one defendant in a particular case. However, there must be some inquiry to determine whether this is true or not. In fact, it has been held that the trial judge must make a factual reconstruction of the scope of prior legal representation and must determine whether it is reasonable to infer that any confidential information allegedly given to the attorney was given. Finally, the trial judge must determine whether that information is relevant to the issue raised in litigation pending against the former client. None of this was done in the present case. Therefore, we would have to resort to speculation and conjecture to determine whether or not Mr. Callahan should have been barred from participating in the defense of the petitioner. I am unable to do this.

It is interesting to note that shortly after the court ordered the three defendants to obtain counsel other than Callahan that a guilty plea was negotiated jointly by the two attorneys representing the Evans' defendants. We have part of that plea abstracted in this case and it is most interesting to note after Mr. Evans had become confused on some of the dates concerning the alleged theft the court stated:

"You need to get yourself some way to straighten out those dates when you testify."

Further addressing the petitioner, the court stated:

> "Mr. Mann, if I have to act, I will act in the summary fashion. You and your attorney, Mr. Callahan, should be well aware of this. I do not expect Mr. Callahan to show up here as your attorney on February 26, if he does, you can expect, and you are given notice, that this court will act summarily, which may mean, among other things, that you may be deprived of your liberty for a while. I hope you understand that."

The attitude of the court is further reflected when he states:

> "I would like to ask the response be along the lines of disciplinary enforcement of disciplinary rules of the Supreme Court as set out in the Canons of Ethics. Since it's come up this way it must be proceeded in this manner. If that includes suspension or disbarment of Mr. Callahan, so be it."

It appears to me that the prosecuting attorney, the trial judge, and this Court are more interested in helping Mr. Evans, who has agreed to snitch on petitioner, than they are in protecting the rights of the accused. The petitioner has had a long association with Mr. Callahan as his attorney. He desires Mr. Callahan to continue representing him in this matter; he has confidence and trust in Mr. Callahan. So it was with Mr. Evans when he testified that he had complete trust and confidence in George Callahan as an attorney. If the state is really interested in seeing that Mr. Evans's rights are protected, it would be a simple matter to grant him immunity.

In *Reickauer v. Cunningham*, 299 F. 2d 170 (1962), the court stated:

> The second fact set forth in the petition which constitutes a violation of the petitioner's constitutional rights is that he was denied counsel of his own choosing. The petitioner alleges that he "begged and plead with the officials" to allow him to write to Mr. Leith Bremner, an attorney of Richmond. He further alleges

that he was prevented by the state officials from contacting any lawyer. Instead, he was compelled to accept the services of an attorney who was brought to him by the Sheriff. He, therefore, had to accept this lawyer or go without counsel. The affidavit of counsel of record does not altogether refute this statement. It states that he was called from Baltimore by some person whose identity was not disclosed to him and as a result of the call he went to the jail and offered his services to the petitioner, who accepted him. Under these circumstances the petitioner could very well have accepted the attorney under the belief that he had no other choice.

The right of self-representation has since the beginning of our Nation been held to be guaranteed. § 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted by the first Congress and signed by President Washington one day before the 6th Amendment was proposed, provided that "in all courts of the United States, the parties may plead and manage their own cause personally or by assistance of . . . counsel . . . " It has been held that the 6th Amendment guarantee of the right of assistance of counsel implicitly embodies the right to dispense with one's lawyer and represent himself. *Adams* v. *U.S.,* 317 U.S. 269 (1942).

Arkansas Constitution, art. 2, § 10 provides that a person has the right "to be heard by himself and his counsel." In fact, this Court has stated in *Steel* v. *State*, 246 Ark. 75, 436 S.W. 2d 800 (1969):

> . . . We very quickly disagree—but of course, an accused person *is entitled to retain whomever he desires to represent him.*

It is hard for me to understand the majority in holding that an accused must be represented by an attorney approved by the trial judge whether the accused likes it or not. Perhaps we have provided this accused a reversible error before he is even tried.

So far as Evans is concerned, he cannot be hurt by the divulgence of any confidential information revealed to Callahan because he has made a deal and is no longer in

jeopardy unless he told Callahan of other unlawful acts which he is fearful might be revealed by Callahan on cross-examination. He could then, of course, take refuge in the 5th Amendment and still not be harmed. However, it appears he does not have a great deal to fear by way of prosecution under the circumstances existing in this case.

Why was it not unethical for the same attorneys to represent the other two defendants at the same time since these two were charged with the same offense as is the petitioner? No one has accused these outstanding attorneys of being either unethical or in the position of not being able to represent their clients. It seems to me that any counsel worth his salt who takes on the defense of the petitioner is going to constitute more danger to Mr. Evans on cross-examination than would Mr. Callahan who has agreed not to reveal any confidential information previously relayed to him by Evans.

Obviously Evans is cooperating with the state fully and will, no doubt, reveal to the state confidential information furnished by petitioner to Callahan during the time they were both represented by him. Is it fair to allow the state to use the same type information we here prohibit the petitioner from using? It seems to me the courts and prosecuting attorneys are under the same duty as other lawyers to avoid even the appearance of professional impropriety. If so, perhaps everyone involved in the case up to now should recuse themselves.

If petitioner wants to use Callahan that should be his decision and not ours. After all, a man has the right to go to Hades if he so elects although I question his judgment in such case.

I would grant the writ and allow the petitioner to use counsel of his own choosing.