UNITED STATES of America

v.

**Paul BENDETTI, Dennis Mastro, Peter DeLamos, and James Vito Montemarano, Defendants.**

Crim. No. 79–321.

United States District Court, D. New Jersey.

Sept. 3, 1980.

Robert J. Del Tufo, U. S. Atty. by Frederick B. Polak, Sp. Atty., Dept. of Justice, Strike Force, Newark, N. J., and Helen Mollick, Trial Atty., Dept. of Justice, Washington, D. C., for the Government.

Elliott H. Vernon, Shrewsbury, N. J., for defendant DeLamos.

John J. Momot, Jr., Las Vegas, Nev., for defendant Mastro.

Frank T. Swain, Westfield, N. J., for defendant Bendetti.

Oscar B. Goodman, Las Vegas, Nev., for above–named defendants.

Richard T. Philips, Newark, N. J., for defendant Montemarano.

## MEMORANDUM OPINION

LACEY, District Judge.

On October 10, 1979, six defendants in the above–captioned matter were arraigned before this court. On the motion of Elliott H. Vernon, Esq., Oscar B. Goodman, Esq., was specially admitted to this district in order that he be permitted to represent three of the defendants: Paul Bendetti, Dennis Mastro and Peter DeLamos. After all of the defendants were arraigned, pursu-

ant to *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973), I conducted an inquiry concerning the advantages, disadvantages and conflicts of interest arising from Mr. Goodman's joint representation of the three.

This *Hart v. Davenport* hearing was conducted on October 10, 1979. Tr. 14 *et seq.* I thoroughly covered the dangers and risks of multiple representation. Each defendant, *Id.* 39, indicated he wanted Goodman to represent him during the pretrial stage.

Significantly, I pointed out the dangers in three defendants, charged as here with conspiracy, having the same counsel. *Id.*, 19–20. Goodman responded that he was aware of the problem and said:

> . . . it would be my intention, your Honor, that if this court would permit me to remain in the case that at the time of trial each of the defendants would be represented by separate counsel.

Tr. 20, lines 16–19.

Goodman held out to me that as an attorney from Las Vegas he was able to provide the defendants during the pretrial stage expertise other counsel lacked:

> . . . I have found throughout the years that gentlemen who are associated with Las Vegas, who are represented by attorneys who do not come from Las Vegas, when those gentlemen are charged with cases involving Nevada law, involving casinos, involving skimming, involving hidden ownership, that the attorneys who don't live there have ·done their clients a disservice by taking those cases because they're unable to relate to the jury the atmosphere and the flavor of Las Vegas and how business is done there.
>
> I would respectfully suggest to the court that with these gentlemen having independent counsel at the time of trial that certainly they would be entitled no less at this point in time to have a Nevada attorney who is familiar with Nevada rules and regulations and laws go through the pretrial matter . . . .

*Id.* 28, lines 2–16.

This intimation of expertise, accompanied by Goodman's reiteration of his recognition that each defendant should have independent counsel at trial, led me to conclude that hearing by permitting him to represent the three defendants (Bendetti, Mastro and DeLamos) at the arraignment. I stated:

> . . . based on all I've heard I will make a finding, a *Hart v. Davenport* finding that as I indicated in the *Garofola* opinion given the limits that are imposed upon my ability to inquire at this point I cannot say that there is a conflict in interest between the three defendants represented by Mr. Goodman. And, therefore, I will permit him to stay in the case.

In view of the extensive recordings counsel indicated were involved, I set a liberal motion schedule and a tentative trial date in January 1980.

At the conclusion of the October 10 hearing, Frederick Polak, Esq., the attorney for the United States, stated he would file a formal notice of disqualification directed at Goodman. This led to another hearing, on November 5, 1979.

Polak there stated that he had been hampered in discussing immunity and cooperation with Goodman's clients because of the multiple representation; Tr. of November 5, 1979, 3; that Goodman represented an unindicted co–conspirator; that government information, made available to Goodman, indicated that his own clients saw themselves differing in their degrees of culpability; that it was impracticable to allow Goodman to make all the pretrial motion decisions and thus "lock in" the independent trial counsel Goodman had recognized would be necessary; and that the case was a complicated one, covering three years, over 100 overt acts, with the probability of numerous unforeseen developments during pretrial and trial. *Id.*, 3–6. Polak concluded:

> We believe that the longer Mr. Goodman is in the case the longer these defendants will be affected. To act now will save potential continuances, mistrials, perhaps appellate attacks, and per-

mit an individual attorney representing each one of these defendants to review the discovery materials fully and make an independent determination of what motions they can make in the defendant's best interest.

*Id.* 6.

Goodman once again emphasized his expertise in connection with "the Nevada situation," and that he "should be permitted to remain in the case if for no other reason at least until such time as the validity of the wiretaps is challenged." *Id.* 13.

Once again we noted his understanding that Bendetti, DeLamos and Mastro would "have independent counsel representing their interests at the time of trial." *Id.* 13. Goodman did not file a sworn denial of Polak's affidavit averring he, Polak, had discussed with Goodman granting immunity to one of his clients in return for getting his cooperation against the others. *Id.* 16–17. There was, however, this exchange:

THE COURT: All right. I take it—and you told me that you have taken up with them the necessity that they will have to have separate counsel at trial.

MR. GOODMAN: Absolutely.

THE COURT: And they're agreeable to that?

MR. GOODMAN: They are. I wouldn't let them do it any other way.

*Id.* 17.

Thereafter I dictated the following into the record:

I have read Court Exhibit 1 and Court Exhibit 2 [these were sealed at Goodman's request] and . . . I just cannot perceive how in the face of, A, the delicacy of the problem; B, the law as it stands today, and given the trend for tomorrow and everything we've covered at the last *Hart* hearing; and finally what's in these Court Exhibits 1 and 2, how Mr. Goodman wants to stay in this case. Compounding all of the problems that we have is the fact that *Mr. Goodman himself acknowledges that he can't try this case for three defendants, and each one has been so advised by him and each one has agreed that they would get separate counsel at trial.*

Now, what's the consequence of that? I have been told in the papers submitted to me this is a case of unusual complexity. Figures like thousands of hours of tapes have been thrown around this courtroom. I can perceive without exercising much imagination that when Mr. Goodman finally decided it was time to bow out and bring in trial counsel what would then happen? . . . Trial counsel would say, "We can't be ready. This is a case of unusual complexity. There are thousands of hours of tapes that we're going to have to listen to. There are thousands of documents in Nevada and here that we're going to have to examine. Judge, our clients have a Sixth Amendment right to have counsel represent them who are familiar with the case. And while we have a great deal of respect for Mr. Goodman, his reputation has preceded him here, nonetheless we have to do this job independently."

Now, if Mr. Goodman wants to stay in this case as sort of a general counsel for these three defendants, founded upon his knowledge of the peculiar features of the case that he feels enable him to serve the three people so well, he's going to have to do this as well. Each one now is going to have to get separate counsel and then the assessment can be made by each of the individual counsel as to the extent to which Mr. Goodman can remain in the case representing the three defendants.

And on that basis, Mr. Goodman, I will permit you to remain in the case.

MR. GOODMAN: Very good.

THE COURT: On any other basis I will not be able to do it.

MR. GOODMAN: That was anticipated, your Honor, and discussions have been ongoing with other counsel.

THE COURT: All right. And I will direct further that given all of the problems of discovery in this matter that that be done within the next two weeks.

And I think, Mr. Polak, you can discuss with Mr. Goodman the form the order should take. Do that out in the hall. Get

the order prepared, get it submitted to me today and we'll get it filed. [emphasis supplied.]

*Id.* 35.

My reasoning was, as is reflected by the record, that the defendants would derive benefit from Goodman's claimed expertise in Nevada matters during pretrial but that each defendant would have to retain, then and there, counsel who would represent him at trial. Goodman's response, in the presence of Elliott H. Vernon, Esq. [who was retained shortly thereafter by DeLamos] and the three defendants [Bendetti, Mastro and DeLamos] indicates not only an understanding but an acquiescence in that ruling. An order was filed on November 5, 1979, as follows:

This matter having been opened to the Court by Frederick B. Polak, Special Attorney on behalf of the United States, for an Order disqualifying Oscar B. Goodman, Esq. from the representation of the three defendants Paul Bendetti, Dennis Mastro and Peter DeLamos,

IT IS on this 5 day of November, 1979,

ORDERED and ADJUDGED that each of the three defendants, Paul Bendetti, Dennis Mastro and Peter DeLamos are to obtain separate counsel in this matter by November 19, 1979; and it is further

ORDERED and ADJUDGED that each such separate counsel must evaluate the case of his client and determine whether Mr. Goodman's continued representation of the three defendants through the pretrial phases of this matter constitutes a conflict of interest; and it is further

ORDERED and ADJUDGED that such decision be made known to this Court as soon as practicable.

Following retention of separate counsel I held still another hearing on December 10, 1979, to assure that the representation as arranged protected the rights of the defendants and was free of conflict. Tr. of December 10, 1979, 12.

Vernon had originally appeared as local counsel, with Goodman, for all three defendants. Now he was representing only DeLamos. Questioning of the defendants and counsel for Bendetti and Mastro indicated there was, at this early juncture, no reason for not permitting Vernon to represent DeLamos. *Id.* 13, 16–17. *See* Vernon letter to the court, December 4, 1979, Court Exhibit 6.

Having approved Vernon's position as counsel for DeLamos, I put this question:

THE COURT: All right. Now, is the fact that Mr. Goodman remains in the case to represent all three of the defendants in some manner that I have not yet penetrated to, is that acceptable to you?

MR. VERNON: It certainly is, your Honor. I perceive no conflict. He's here as a general counsel predicated .upon the intricacies of Nevada law and casino gambling laws emanating from the state of Nevada.

*Id.* 17.

Further questioning elicited that Frank T. Swain, Esq., had represented DeLamos in a state investigation in New Jersey at the request of Goodman. Counsel and the parties, however, assured me that they consented to his representing Bendetti here; and I saw no basis, in the record before me, for barring Swain.

Next, I asked each counsel to state what he perceived Goodman's role to be. While each counsel asserted he had considerable criminal trial experience, it appeared each felt that Goodman's presence, even at trial, as a sort of adviser or "general counsel," was deemed desirable because of his experience in "Las Vegas gaming," "RICO wiretapping," and, as noted by Vernon, "the intricacies of Nevada law and casino gambling laws emanating from the state of Nevada." *Id.* 17, 21.

Nonetheless, counsel indicated they would not be displaced by Goodman:

THE COURT: Who's going to make the final decision on what your client—what is best for your client, you or Mr. Goodman?

MR. VERNON: My client is going to make that decision.

THE COURT: Who gives him the advice?

MR. VERNON: I will give him the advice.

THE COURT: And not Mr. Goodman?

MR. VERNON: Not Mr. Goodman.

*Id.* 20.

John J. Momot, Esq., essentially saw Goodman's role as I have just defined it:

The case deals with many issues dealing with RICO wiretapping and gaming regulations in which I, knowing Mr. Goodman for many years, recognize that he is very, very well qualified in this area and I personally would be looking to him for expertise in this area to assist in my representation of Mr. Mastro during the coming motions and trial itself.

THE COURT: You don't feel qualified to do it without Mr. Goodman's help?

MR. MOMOT: I do feel qualified; however, I do understand his expertise in this area–

THE COURT: In what area?

MR. MOMOT: Especially gaming, your Honor.

THE COURT: You mean Las Vegas gaming, Nevada gaming?

MR. MOMOT: Las Vegas gaming, yes, your Honor. And I think he would be of great assistance not only to counsel involved in this matter but to any and all defendants.

THE COURT: Mr. Swain.

First, let me just ask Mr. Momot one question. Excuse me just a minute.

MR. MOMOT: Yes, sir.

THE COURT: As you heard his role stated by Mr. Vernon, is that your understanding as well?

MR. MOMOT: That is my understanding, your Honor.

*Id.* 20.

I concluded the hearing by dictating the following into the record:

Now, with respect to Mr. Goodman, let me say this. Given the responses I have received I will permit Mr. Goodman to remain in the matter in the role, Mr. Goodman, as you have described that role up to the point of trial. I will reserve at this point on whether I will permit him to appear at trial. I'm doing this for two reasons. First, I want to be sure that at the time trial begins, if, as you put it, it reaches that stage, all counsel and the three defendants will have an opportunity once again to express to me what their thinking is as regards Mr. Goodman appearing at trial and representing all three of the defendants.

Secondly, I want to be in a position to say at that point that based upon the case as I know it and as I hear about it from counsel at that point, that there is in fact nothing but good that can flow to each of those defendants from having Mr. Goodman appear in the role as has been defined for him by you here today.

Among the factors I will have to consider at that time will be what may be the appearance to a jury of Mr. Goodman appearing for all three of those defendants.

Now, this means, therefore, since I am reserving on this at this point, that each of the three counsel that represents the three individual defendants here today will have to be prepared to the hilt to go forward without any assistance from Mr. Goodman at trial in the event I judge that to be necessary.

I am assured by each one of the three of you that you are, in fact, qualified by virtue of your own experience to handle these cases in the event Mr. Goodman should be barred. Each of you has told me that he has substantial experience in trying criminal cases and I'm satisfied with your assurances. I accept those assurances and I am satisfied with them.

I do not see the potential for harm in Mr. Goodman remaining in the case through the pretrial stages that I perceive there may be in his appearing at trial for the three defendants. But I am not ruling him off the reservation for trial. I'm simply reserving on it at this point. And I will, of course, hear from each of the defendants and from counsel at the time of trial in the event you renew your application at that point to

have Mr. Goodman appear for all three of the defendants at trial.

*Id.* 30, line 13, to 32, line 4.

Thereafter, pretrial matters unfolded and the case was set for trial on September 10, 1980, as defendants required additional time to prepare.

On July 29, 1980, counsel were before me on various matters and the question of Goodman's participation at trial was raised. One issue related to the defense designation of the electronic tapes they intended to use at trial. I had ordered that this information be furnished so that questions of audibility and authentication could be resolved before trial.

One defense counsel stated that the tapes were in Las Vegas and "until the government puts its case in or commences this case, we don't know what tapes we're going to utilize." Tr. of July 29, 1980, 10.

I stated that I had long ago required the government to provide copies of the recordings it was going to use, with transcripts, that technical evidence matters were being heard on those pretrial, and that the defense had to respond in kind. I noted that the defense was not being asked to forego surprise–the tapes they had were furnished to them at my direction by the State of New Jersey in cooperation with the United States. *Id.* 9–11; 13–16.

Further, referring to the fact the tapes were in Las Vegas, I noted that I was holding New Jersey counsel responsible for conforming to my order. I extended the date for compliance to August 13, 1980.

Thereafter, I dealt with Goodman's trial status. Before dealing with what Goodman's role at trial is to be, a discussion of applicable legal principles is appropriate. No elaborate review is necessary.

■ Counsel have been referred by me to *United States v. Dolan,* 570 F.2d 1177 (3d Cir. 1978) and *United States v. Garafola,* 428 F.Supp. 620 (D.N.J.1977). I take it to be the law of this circuit that where the district court cannot satisfy itself that there has been a proper waiver of the Sixth Amendment right to effective assistance of counsel, he need not and, indeed, probably should not accept it. *United States v. Dolan, supra,* 570 F.2d at 1181.

■ I have meticulously probed into the matter on more than one occasion. Yet I cannot say that the "waivers" made by the defendants Bendetti, Mastro and DeLamos are knowledgeable and intelligent under *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The averments made by the United States on its motion heard last November have never been specifically denied. Moreover, the pretrial developments support the fact that these defendants may have differing interests and may have engaged in varying activity with respect to the principal government witness, the decedent Russo [whose testimony will be largely in the form of electronic recordings].

There can be no doubt that at trial these defendants are better served by each having his own separate and independent counsel. *Fryar v. United States,* 404 F.2d 1071, 1073 (10th Cir. 1968), *cert. denied,* 395 U.S. 964, 89 S.Ct. 2109 23 L.Ed.2d 751 (1969).

Indeed, given what is so obvious to me, and was accepted by Goodman and the defendants in November, I am mystified by the desire now expressed that Goodman be permitted to take over the defense of all three of these defendants. *See* Notice of Motion for Stay of Proceedings Pending Appeal, p. 2, indicating an appeal is being taken from my decision "refusing to permit Oscar B. Goodman, Esq., to participate in all stages of the trial of this matter on behalf of the defendants, Bendetti, Mastro and DeLamos. . . ." The situation is made even more puzzling by the fact that not once but several times Goodman agreed that, at trial, the defendants would have separate counsel, that they understood this, and that they were agreeable to this. Finally, in situations of multiple representation, the district judge is handicapped by the restrictions upon his ability to explore into the defenses of each defendant, the facts respecting each, what the government will offer as to each, what evidence will be

456

offered by each, how each will want his defense conducted, and how each will (with his counsel) want cross–examination conducted of witnesses implicating him or of witnesses implicating co–defendants but not him.

The reasons for separate and independent counsel are stated in Geer, Conflict of Interests and Multiple Defendants in a Criminal Case: Professional Responsibilities of the Defense Attorney, 62 Minn.L.Rev. 119 (1977).

Simply by way of example, if a government witness implicates defendant A, but not defendant B, what is their joint counsel to do? He must shake the witness' testimony as to A, perhaps even suggesting that the witness is not credible. On the other hand, must he not, at some stage, note that the witness has not implicated B?

In the face of the "stonewalling" here by Goodman, a district court is placed in a difficult position. Defendants ordinarily should be permitted to have counsel of their choice. *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1093 (3d Cir. 1976). *Cf. Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *United States v. Laura,* 607 F.2d 52 (3d Cir. 1979). Yet I cannot escape the persistent notion that there is more here than meets the eye. Why, I must ask, do all the defendants want Goodman to represent them at every trial stage when it is so clear that their interests are better served by each having his own separate and independent counsel?

This same nagging question has been dealt with in other places. *See United States v. Garafola, supra,* 428 F.Supp. at 624 n. 7 and 627, citing and quoting from a paper by Alan T. Cole, Esq., former chairman of the Section of Criminal Justice, American Bar Association; and *see* ABA Standards Relating to the Defense Function, § 3.5(b) at 159, 211, and 214. *See also United States v. Quinones,* 613 F.2d 47 (3d Cir. 1980); *United States v. Provenzano,* 620 F.2d 985, 1004 (3d Cir. 1980).

While I cannot say that the reasons advanced in the Cole paper, as quoted in *Garafola,* are present here, I can say that de-fendants, at trial, will be far better represented by separate and independent counsel than by Goodman. I can also state that I cannot satisfy myself that their "waiver" is a knowing and intelligent one.

Accordingly, I will not permit Goodman to replace Vernon, Swain and Momot as counsel for the three defendants.

What role, if any, may Goodman perform at trial? Notwithstanding the fact that I have been given no specifics, as I was in connection with pretrial matters, the theme continues that Goodman has certain special expertise that defendants will require at trial, this notwithstanding Vernon, Swain and Momot are experienced in criminal defense work and were retained at a time when, as I have stated, the defendants and Goodman had agreed they would be trial counsel.

Nonetheless, I can accommodate the claimed necessity for Goodman's expertise with the defendants' right to separate and independent (and effective) counsel under the Sixth Amendment.

I will permit Goodman to continue in his role as counsel to the three defendants so that he will be available as an adviser to the three counsel when and if they need his aid. He can, of course, sit at counsel table to be readily available. I emphasize, however, that I regard Messrs. Vernon, Momot and Swain as counsel for DeLamos, Mastro and Bendetti, respectively. In this way I can assure that trial decisions made by a defendant and his counsel will be made not in the light of how they serve all three, but rather how they serve that particular defendant.

At the hearing on July 29, 1980, I was asked to detail specifically what Goodman would be permitted to do at trial. Tr. of July 29, 1980, 16, *et seq.* I have reviewed what I there stated; and now, upon reflection, believe amplification of my remarks is appropriate.

*Opening statements :* It is impossible to predict at this stage whether one or all of the defendants may want to waive opening, and if they open what the opening should

comprise. Nonetheless, it is clearly in the best interests of each defendant that his own lawyer open for him. Goodman will not be permitted to open jointly for the three defendants.

*Summation* : The procedure and the reasons therefor are as they are set forth under "Opening Statement." Indeed, common sense and experience dictate that at the conclusion of the trial each defendant will have, at the very least, different shades of emphasis on argument, if not totally different arguments, and in making such must have his own case presented undiluted by arguments from his counsel which are addressed to the case against–and for–the other defendants.

*Witnesses* : Much of this aspect has to be handled on an ad hoc basis, witness by witness. If a technical matter arises, e. g., an aspect of electronic surveillance, and all counsel and their clients are satisfied that Goodman can best handle direct or cross of that particular witness, I will, after appropriate inquiry, permit him to do so, acting for all three defendants, with appropriate instructions being given to the jury. If on cross, his examination will be in place of all three counsel, not in addition to the examinations performed by counsel.

*Legal arguments* : If all three defendants' counsel agree that a particular legal argument can be best presented by Goodman, and their clients agree, I will permit him to make such, again, where the jury is present, after appropriate instruction is given to the jury.

Submit an order conforming with the forgoing.