**UNITED STATES of America**

v.

**DOLAN, John E., Appellant.**

No. 77–1496.

United States Court of Appeals, Third Circuit.

Argued Oct. 18, 1977.

Decided Jan. 23, 1978.

Samuel R. DeLuca, Joseph W. Gallagher, Jersey City, N.J., for appellant.

Jonathan L. Goldstein, U. S. Atty., Ralph A. Jacobs, Asst. U. S. Atty., Newark, N.J., for appellee.

Before ROSENN and VAN DUSEN, Circuit Judges, and COHILL, District Judge.*

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This case presents a troublesome problem at the interface of two spheres of prime judicial concern: the scope of the sixth amendment rights of a criminal defendant and the enforcement of appropriate standards of professional conduct for members of the criminal defense bar.

The genesis of this appeal lies in the indictment of Michael Garofolo and John Dolan in the United States District Court for the District of New Jersey for unlawful possession of chattels stolen from foreign commerce, 18 U.S.C. § 659 (1970). Both defendants retained Samuel R. DeLuca, Esquire, to represent them in this matter, and both entered pleas of not guilty. Pursuant to this court's decision in *United States ex*

* Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

*rel. Hart v. Davenport,* 478 F.2d 203 (3d Cir. 1973), Judge Herbert Stern conducted a hearing to determine whether Mr. DeLuca's joint representation of the defendants would give rise to a prejudicial conflict of interest. Despite Judge Stern's advice as to the merits of separate representation, both defendants stated their desire to continue to retain Mr. DeLuca.[1]

On the eve of trial set before Judge Frederick Lacey, Attorney DeLuca communicated with the Assistant United States Attorney in charge of the case seeking a dismissal of the charges against Dolan in exchange for Garofolo's guilty plea. The Government refused to negotiate such a deal. Garofolo was unaware of this attempted bargain.

The next day, Garofolo pleaded guilty. Before accepting the plea, Judge Lacey conducted a hearing to ensure the knowing and voluntary nature of the guilty plea. In addition, he conducted another *Davenport* hearing in which his questions elicited from Garofolo answers indicating that Garofolo did not believe that he had been prejudiced in any way by the joint representation. Mr. DeLuca similarly indicated, in response to Judge Lacey's questions, that he saw no conflict of interest in the joint representation. The judge further examined Dolan:

> The Court: . . . Have you [Mr. Dolan] heard all of these questions I put to Mr. Garofolo?
>
> Mr. Dolan: Yes, sir, I have.
>
> The Court: All right.
>
> And now, of course, Mr. DeLuca would continue to represent you. Is that right?
>
> Mr. Dolan: Yes, sir.
>
> The Court: All right.

> Are you satisfied that your interests will in no way be prejudiced by the fact that Mr. DeLuca up until this point and, indeed, through the taking of this guilty plea has been representing Mr. Garofolo as well as you? Are you satisfied that your interests will not be prejudiced for that reason?
>
> Mr. Dolan: Yes.
>
> The Court: And you're perfectly willing to continue with Mr. DeLuca.
>
> Mr. Dolan: Yes, sir.

The court accepted the guilty plea, and the case against Dolan, with DeLuca as his attorney, proceeded to trial.

The defendant took the stand as the first defense witness. He testified, in essence, that he was only assisting his co-worker Garofolo in what he believed, at the time, was an innocent endeavor to recover television sets from an abandoned van and therefore lacked the requisite criminal state of mind. The court interrupted the Government's cross-examination with questions of its own, and the defense moved for a mistrial on the ground that those questions had been prejudicial.

During the conference in chambers on the mistrial motion, Judge Lacey again probed the possibility of conflict of interest. Attorney DeLuca stated that he believed there was no conflict as long as Garofolo did not testify and inculpate Dolan—which he said Garofolo had indicated to him he would not do. The Government stated, however, that it had subpoenaed Garofolo, intending to call him as a rebuttal witness. Judge Lacey questioned DeLuca as to how he could give Garofolo legal advice uncolored by his continuing representation of Dolan, or cross-examine Garofolo effectively while still representing him in the upcoming sentencing.[2] Mr. DeLuca adhered to his percep-

---

1. No transcript of that hearing is available; it is undisputed, however, that there was such a hearing and that Judge Stern gave such advice.

2. Mr. DeLuca informed Judge Lacey that he did not think that Garofolo should testify, not having yet been sentenced, and that Garofolo would undoubtedly consult him about Garofolo's rights, and that he would advise Garofolo of his fifth amendment privilege against self-in-

crimination. The trial judge further inquired whether any advice DeLuca now gave Garofolo "would be rendered by his acting solely in Garofolo's interest, or would be influenced even slightly, by his continuing representation of Dolan." *United States v. Garafola,* 428 F.Supp. at 620, 623 (D.N.J.1977).

tion that there was no conflict. Judge Lacey granted the motion of mistrial and, after a thorough study of the cases, the professional standards, and a well-reasoned analysis, ordered DeLuca to withdraw from representing either Garofolo or Dolan. *United States v. Garafola*, 428 F.Supp. 620 (D.N.J.1977).

■ Garofolo ultimately retained separate counsel and entered a guilty plea. While awaiting a new trial, Dolan, still desiring to have DeLuca represent him, took this appeal.[3]

■ To protect the interests of criminal defendants enmeshed in the midst of our adversarial system of justice, the Sixth Amendment of the United States Constitution guarantees each defendant the "assistance of counsel for his defense." This guarantee "contemplates that such assistance be untrammeled and unimpaired," *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942). Representation of co-defendants by one attorney, when it is possible to discern a prejudicial conflict of interest arising therefrom,[4] is no longer "untrammeled and unimpaired" and will constitute a constitutionally defective denial of effective counsel. *Walker v. United States*, 422 F.2d 374 (3d Cir.), *cert. denied*, 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970).[5]

It is evident from the record in the instant case that, for the reasons carefully enumerated by Judge Lacey in his opinion in *United States v. Garafola, supra*, and *Supplement* (filed April 13, 1977), Mr. DeLuca cannot render to appellant Dolan effective assistance of counsel.[6] Dolan contends, however, that under the rule in *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973), he has the right to waive effective assistance of counsel and proceed with DeLuca as his attorney in spite of the conflict of interest. We hold that the rule in *Davenport* does not dictate such a result and we affirm.

*Davenport* concerned an appeal from a denial of a petition for habeas corpus challenging a state court conviction on the ground, *inter alia*, that the defendant was deprived of the effective assistance of counsel in his trial because his attorney represented his co-defendant. Noting that the record of the state proceedings clearly met the *Walker* test of a showing of conflict of interest, the court held that the defendant was denied the effective assistance of counsel. In dicta, Judge Gibbons stated that the right to effective assistance of counsel could be waived, 478 F.2d at 210, as long as the dangers inherent in joint representation were explained to the defendant at the

3. Jurisdiction lies in this court from 28 U.S.C. § 1291 (1970), an appeal from a final order of the district court. This court has held that an order denying a motion to disqualify counsel is appealable under 28 U.S.C. § 1291. *Kroungold v. Triester*, 521 F.2d 763 (3d Cir. 1975). Although not a "final judgment" in the traditional sense, attorney disqualification orders are "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 496 F.2d 800, 805–06 (2d Cir. 1974) (en banc), *quoting Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 547, 69 S.Ct. 1221, 93 L.Ed.2d 1528 (1949). This rule has also been applied recently to criminal cases. *United States v. Mahar*, 550 F.2d 1005, 1007 (5th Cir. 1977). *See In re Investigation Before the April 1975 Grand Jury*, 174 U.S.App.D.C. 268, 273, 531 F.2d 600, 605 n. 8 (1976).

4. The possibility of prejudice lies in the realities of trial practice—a given course of action may

be advantageous to one defendant but not the other. For a comprehensive catalogue of the various ways in which prejudicial conflicts of interest can arise, *see* 62 Minn.L.Rev. 119 (1978), Geer, *Conflict of Interests and Multiple Defendants in a Criminal Case: Professional Responsibilities of the Defense Attorney*, 62 Minn.L.Rev. 119 (1977) [hereinafter "Geer, *Conflict of Interests* "].

5. The federal courts also have a statutory duty under the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(b) (1970) to appoint separate counsel when a conflict of interest is present: "[T]he court shall appoint separate counsel for defendants having interests that cannot properly be represented by the same counsel. . . ."

6. In essence, Judge Lacey felt that Mr. DeLuca, having previously represented Garofolo, could not adequately cross-examine him after he testified for the Government, thereby prejudicing Dolan.

earliest possible time in the proceedings. *Id.* at 211. *Accord, Matter of Grand Jury Empaneled January 21, 1975,* 536 F.2d 1009, 1012 (3d Cir. 1976); *United States ex rel. Horta v. De Young,* 523 F.2d 807, 810 (3d Cir. 1975).

 The waiver of effective assistance of counsel which the *Davenport* rule facilitates is subject to the limitations established earlier by the Supreme Court in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), that a waiver of a constitutional right must be made knowingly, intelligently, and with awareness of the likely consequences of the waiver. Whether the waiver is intelligent and competent "should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942), *quoting Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). *See United States v. Woods,* 544 F.2d 242, 268–69 (6th Cir. 1976); *United States v. Wisniewski,* 478 F.2d 274, 285 (2d Cir. 1973). For a trial judge to find that a waiver is knowing and intelligent, he must be satisfied that the defendant is aware of the foreseeable prejudices his attorney's continued representation could entail for his trial, and possible detrimental consequences of those prejudices.[7] *United States v. Carrigan,* 543 F.2d 1053, 1055 (2d Cir. 1976); *United States v. Gaines,* 529 F.2d 1038, 1043–44 (7th Cir. 1976); *United States v. Garcia,* 517 F.2d 272, 278 (5th Cir. 1975); *United States v. Foster,* 469 F.2d 1, 5 (1st Cir. 1972); *Campbell v. United States,* 122 U.S.App.D.C. 143, 144–45, 352 F.2d 359, 360–61 (1965).

The form of the inquiry should follow in substance, though not necessarily in precise form, the procedure as adopted by the Fifth Circuit in *Garcia, supra,* in which the court said:

As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language."

517 F.2d at 278 (footnotes omitted). *See* Hyman, *Joint Representation of Multiple Defendants in a Criminal Trial: The Court's Headache,* 5 Hofstra L.Rev. 315, 334 (1977).

Implicit in this inquiry procedure is the possibility that a trial judge may not be satisfied that the waiver is proper. For example, a defendant may be competent enough to stand trial, but not competent enough to understand the complex, subtle, and sometimes unforeseeable dangers inherent in multiple representation. More importantly, the judge may find that the waiver cannot be intelligently made simply because he is not in a position to inform the defendant of the foreseeable prejudices multiple representation might entail for him.

At the start of the trial, the judge will not know the defenses to be raised on behalf of each defendant, the potential defenses to be foregone, the weight and sufficiency of the evidence to be adduced against each defendant, or each defendant's personal history and past criminal

---

**7.** Furthermore, the waiver must be unconditional. In *United States v. Bernstein,* 533 F.2d 775 (2d Cir. 1976), the defendant's waiver "was not without strings" in the event of possible prejudice, and, as such, was not a competent waiver. *Id.* at 788.

record. Without such information, the trial judge cannot impress upon a defendant the significance of waiver, nor can he evaluate the defendant's appreciation of it.

Geer, *Conflict of Interests* at 141–42. It may well be true, then, that in many cases the trial judge will not be in a position to accept a waiver of effective assistance of counsel.[8]

■ When cases arise in which the judge finds it impossible to elicit and accept a knowing and intelligent waiver from the defendant, it is the obligation of the attorney concerned, as an officer of the court and subject to its supervisory powers, to withdraw from the case.

> The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.

*ABA Standards Relating to the Prosecution Function and the Defense Function* § 3.5 (Approved Draft 1971) at 211. To the same effect is the *Code of Professional Responsibility,* DR5–105 (Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer). If the trial judge finds that no competent waiver can be made, then the defendant cannot "give an informed consent," and the attorney runs the risk of disciplinary proceedings if he refuses to withdraw from the case. *See* Geer, *Conflict of Interests* at 148–50.

■ Besides breach of the lawyers' ethical code, there are public interests which impel an attorney's withdrawal from representing multiple defendants absent a knowing and intelligent waiver. Joint representation creates the possibility of defendants "stone-walling"—obstructing Government attempts to obtain cooperation of one of a group of defendants. This phenomenon is particularly frustrating in the context of grand jury proceedings, in which the public interest in ferreting out criminal activities, along with the need to enforce attorneys' ethical conduct, have been held to outweigh the defendant's choice of counsel:

> Although it may be true that these four witnesses may waive their Sixth Amendment right to effective assistance of counsel, they cannot at the same time waive the right of the public to an effective functioning grand jury investigation. . . . It would seem to this court that the public has an overriding interest to see that the grand jury investigation in this matter be allowed to uncover the truth free of any potential obstructions arising from a conflict of interest in multiple representation.

*Matter of Grand Jury Proceedings,* 428 F.Supp. 273, 278 (E.D.Mich.1976). *See In re Abrams,* 56 N.J. 271, 266 A.2d 275 (1970).

■ Finally, exercise of the court's supervisory powers by disqualifying an attorney representing multiple criminal defendants in spite of the defendants' express desire to retain that attorney does not necessarily abrogate defendant's sixth amendment rights. This court has held specifically that "although the right to counsel is absolute, there is no right to a particular counsel." *Kramer v. Scientific Control*

---

**8.** Judge Lacey urges that a trial judge cannot conduct a meaningful inquiry when a lawyer jointly represents multiple criminal defendants. He points out that the average defendant cannot fully understand the subtle implications involved and the extent to which his counsel's trial strategy may be affected by his representation of another or more defendants. Moreover, the judge does not know the case, nor can he know the facts or inferences to be drawn from them. He too is unaware of the strategy

of government and defense counsel and he cannot inquire into the defense without violating the defendant's fifth and sixth amendment rights, whether the interrogation is held in open court or in camera. *United States v. Garafola,* 428 F.Supp. at 623–24. The judge "is restricted to imparting vaguely contoured, abstract advice on a doctrine as to which the lawyer . . . has undoubtedly already advised his clients." *Id.* at 624.

Corp., 534 F.2d 1085, 1093 (3d Cir. 1976), quoting United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1215 (3d Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).

 It is possible to argue, however, that the holdings in these cases have been eroded by the Supreme Court's decision in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1976), in which the Court held that a criminal defendant has a sixth amendment right to conduct his defense pro se. If a criminal defendant has the right to waive the assistance of counsel altogether, then it would seem logical that a defendant could waive the right to have the counsel of his choice free from any conflicts of interest. United States v. Garcia, 517 F.2d 272, 277 (5th Cir. 1975). This line of reasoning is not persuasive, however, because it runs contrary to express language in Faretta. The Court stated that while the right of self-representation is necessarily implied by the structure of the sixth amendment, it is an independent right which does not arise mechanically from a defendant's power to waive the right to the assistance of counsel, 422 U.S. at 819–20 & n. 15, 95 S.Ct. 2525. Because the source of the right of self-representation in the sixth amendment is independent from the right to assistance of counsel, the absolute right to self-representation does not imply the absolute right to counsel of one's choice. Geer, Conflict of Interests at 158–59. See also United States v. Sexton, 473 F.2d 512 (5th Cir. 1973), (while the sixth amendment grants a criminal defendant an unqualified right to assistance of counsel, it does not necessarily follow that his right to particular counsel is absolute and unqualified).

In United States v. Dardi, 330 F.2d 316 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1965), the Second Circuit held that the right to be represented by a particular attorney is not absolute when it would unduly delay and require the adjournment of a trial because of counsel's illness. Accord, Maynard v. Meachum, 545 F.2d 273 (1st Cir. 1976). Under such circumstances, temporary assignment of a codefendant's counsel when there appears to be no conflict of interest is not, in itself, a denial of effective assistance of counsel. United States v. Dardi, supra, at 335. Moreover, an indigent defendant does not have an absolute right to the assignment of counsel of his or her own choice; rather, the appointment is left to the sound discretion of the court. E. g., United States v. Smith, 464 F.2d 194, 197 (10th Cir. 1972). If the right to particular counsel is not absolute for an indigent or when it will unduly delay or subvert judicial proceedings, then certainly the sixth amendment should not be interpreted to allow a defendant to sanction a lawyer's breach of ethical duties, when such duties serve the public interest as well as the client's. See Geer, Conflict of Interests, at 158–60.

Unlike Garcia, supra, in which the Fifth Circuit upheld a criminal defendant's right to choice of counsel in spite of a possible conflict of interest,[9] the district court in the instant case was confronted with an actual conflict of interest. First, the court found it significant that defense counsel had attempted to negotiate with the Government for a dismissal of the indictment against Dolan in exchange for a guilty plea by Garofolo, without Garofolo's knowledge. Second, Garofolo, who originally perceived no conflict of interest, has since concluded that he should have separate counsel. The trial judge, in a supplement to his original opinion, found that Garofolo was denied effective representation from the very be-

9. In reaching its decision in United States v. Garcia, supra, the court expressly concluded that it "need not actually determine whether the multiple representation . . . will result in ineffective assistance of counsel." 517 F.2d at 275. In In Re Investigation Before April 1975 Grand Jury, 174 U.S.App.D.C. 268, 531 F.2d 600 (1976), the court considered the Government's allegations of potential conflict in multiple representation of grand jury witnesses but found nothing in the record to show actual conflict. The court therefore held the motion for separate counsel for grand jury witnesses premature. Similarly, no actual conflict had yet arisen in Matter of Grand Jury Empaneled January 21, 1975, supra, in which the Third Circuit allowed criminal defendants their choice of counsel.

ginning of his case.[10] The court also noted that Mr. DeLuca, as Dolan's lawyer, could not effectively cross-examine his former client, Garofolo—now an important prosecution witness—without intruding into matters protected by the attorney-client privilege. The court stated during the argument on the motion for mistrial that having heard from Garofolo in the Rule 11 plea and having heard from Dolan, "I am frank to say there is a conflict of interest between the two." Finally, in granting the mistrial motion, the court also directed Mr. DeLuca to withdraw from representing both defendants stating it was "satisfied that there is, in fact, a conflict of interest."

Faced with an actual serious conflict of interest, rather than a mere possibility, in which it is obvious that Mr. DeLuca cannot "adequately represent the interest" of his client, Dolan, must the court accede to Dolan's waiver of conflict of interest?[11] We think not. In the current effort to elevate the standards of the organized bar, the ABA Code of Professional Responsibility provides that "a lawyer may represent multiple clients [only] if it is obvious that he can adequately represent the interest of each . . . ." ABA Code of Professional Responsibility (1975) DR5-105(C). Accordingly, we hold that when a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.[12] Under such circumstances, the court can elect to exercise its supervisory authority over members of the bar to enforce the ethical standard requiring an attorney to decline multiple representation. See Note, *Conflict of Interests in Multiple Representation of Criminal Co-Defendants*, 68 Crim.L. & C. 226, 250 (1977).

Accordingly, the order of the district court disqualifying Attorney DeLuca will be affirmed.

---

10. When Garofolo obtained another lawyer, Judge Lacey directed Garofolo and his new lawyer, Dennis McAlvey, to appear on April 12, 1977, and provided Garofolo with an opportunity to withdraw his guilty plea entered the previous month.

11. This question was expressly left undecided by the Seventh Circuit in *United States v. Gaines, supra,* at 1044.

12. This court's opinion in *United States ex rel. Hart v. Davenport, supra,* still remains the test on direct appeal or collateral attack for determining the validity of a waiver of the effective assistance of counsel in those situations in which waiver would be proper.