Reginald A. LEWIS, a/k/a Maurice Contee, Appellant,

v.

UNITED STATES, Appellee.

Nos. 11209, 79–348.

District of Columbia Court of Appeals.

Argued March 19, 1980.

Decided May 5, 1981.

Geoffrey P. Gitner, Frederick C. Timberlake and Robert Case Liotta, Washington, D. C., for appellant.

Elliott R. Warren, Asst. U. S. Atty., Washington, D. C. with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the original brief was filed, Charles F. C. Ruff, U. S. Atty., John A. Terry, Peter E. George, Michael W. Farrell and Carol E. Bruce, Asst. U. S. Attys., Washington, D. C., were on briefs, for appellee.

Before NEWMAN, Chief Judge, KELLY, Associate Judge, and GALLAGHER, Associate Judge, Retired.*

PER CURIAM:

Appellant was convicted of first degree murder while armed,[1] first degree felony murder,[2] burglary,[3] and armed robbery.[4] He appealed on the ground that he was denied counsel of his choice. His direct appeal has been consolidated with his appeal from the denial of his motion to vacate sentence, alleging ineffective assistance of counsel, under D.C.Code 1973, § 23–110.

On June 3, 1976, after trial commenced and as the jury was about to be selected, attorney Meyer Koonin attempted to enter an appearance on behalf of appellant. Mr. Koonin admitted that he had been approached by appellant's mother only that morning and that he had never met appellant. He requested a continuance to familiarize himself with the case. Appellant was already being represented by his court-appointed attorney, Mr. Timberlake, his third attorney to date.[5] The trial court denied the request for a continuance.

Mr. Timberlake continued as lead counsel. Mr. Koonin was allowed to enter an appearance and confer with Timberlake; however, he was prohibited from examining witnesses or jurors or making motions. The trial judge explained these restrictions to Koonin by pointing out his total unfamiliarity with the case and his resulting inability to cross examine witnesses. After the midday recess, Koonin withdrew. The next morning, appellant told the court he wished to have Koonin as his counsel. The court explained that Mr. Koonin had not been banished by the court, but rather, had chosen to withdraw.

 Appellant's first argument is that the court was required to conduct an inquiry into the effectiveness of his appointed counsel because appellant's attempts to secure additional, private counsel should have alerted the court to appellant's dissatisfaction with his appointed counsel. To be sure, "[w]hen a defendant makes a pretrial challenge to the effectiveness of counsel ... and requests the appointment of new counsel ... the trial court has a constitutional duty to conduct an inquiry sufficient to determine the truth and scope of the defendant's allegations." *Monroe v. United States*, D.C.App., 389 A.2d 811, 820, *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 5 L.Ed.2d 683 (1978). *Accord, Farrell v. United States*, D.C.App., 391 A.2d 755 (1978). Here, however, defendant failed to trigger the inquiry mandated by *Monroe* and *Farrell* because he never expressed dissatisfaction with Mr. Timberlake. Some inadequacy must be alleged, either by the defendant or by defendant's attorney himself, before the court is obliged to question the attorney's effectiveness. *See Pierce v. United States*, D.C.App., 402 A.2d 1237 (1979) (when existing counsel requests appointment of co-counsel to help try capital case because of his own perceived inexperience, court must inquire into effectiveness). As we noted in *Monroe v. United States, supra,*

---

* Judge Gallagher was an Associate Judge of the court at the time of oral argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. D.C.Code 1973, § 22–3202.

2. *Id.*, § 22–2401.

3. *Id.*, § 22–1801.

4. *Id.*, § 22–2901.

5. Appellant's first court-appointed attorney Kubinski had to withdraw on March 11, 1976 because he witnessed a dispute between two potential government witnesses, and the court then appointed Mr. Timberlake. Appellant's mother attempted to hire private counsel, Mr. Parker, to represent her son; however, Mr. Parker withdrew his motion to enter an appearance on June 1, 1976.

defendants' eve-of-trial motions for continuance in order to retain private counsel will not necessitate effectiveness hearings when defendants "fail[ ] to articulate any substantial basis for dissatisfaction with their attorneys . . . ." *Id.* at 821 n.6.

■ Turning to appellant's direct appeal, we conclude that the trial court did not err in denying a continuance to allow Koonin to prepare for trial. The request for a continuance was clearly too late under Super.Ct. Cr.R. 111(c), which states: "Except in extraordinary or unforeseen circumstances, no continuances shall be granted in any case unless requested at least two days before the scheduled date of trial." The court had previously granted a continuance when Timberlake was appointed in place of attorney Kubinski. The government's many witnesses had been called. Thus, the trial judge did not abuse her broad authority to move forward with the trial. *See Gressette v. United States,* D.C.App., 256 A.2d 418 (1969) (motion for continuance in order to substitute private attorney for appointed attorney made on day of trial was too late); *United States v. Bragan,* 499 F.2d 1376, 1379 (4th Cir. 1974) ("the Constitution does not afford an accused . . . the 'unbridled right' to insist that his trial be held in abeyance while he replaces one competent attorney with another").

■ Nor did the limitations placed on attorney Koonin violate appellant's Sixth Amendment right to counsel of his choice. At all times throughout the trial, appellant had the effective assistance of attorney Timberlake. The right to a particular attorney is not absolute. *Harling v. United States,* D.C.App., 382 A.2d 845, 846–47 (1978). It can be qualified by, for example, the court's need to function in an orderly manner, *e. g., United States v. Bragan, supra; United States v. Cozzi,* 354 F.2d 637, 639 (7th Cir. 1965), *cert. denied,* 383 U.S.

911, 86 S.Ct. 896, 15 L.Ed.2d 666 (1966), the court's right to exclude laypersons from practicing law before it, *United States v. Wilhelm,* 570 F.2d 461 (3d Cir. 1978); *see also Harrison v. United States,* 128 U.S. App.D.C. 245, 254, 387 F.2d 203, 212, *rev'd on other grounds,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1967), or, as in this case, the court's obligation to protect defendants from their chosen attorney's violation of ethical rules designed to protect the defendant. *United States v. Dolan,* 570 F.2d 1177 (3d Cir. 1978). *See also Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980) (unless the trial court knows or reasonably should know that a conflict of interest exists, the court need not initiate an inquiry); *Glasser v. United States,* 315 U.S. 60, 71, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942) (trial judge has duty to see the trial is conducted with solicitude for the essential right of the accused to have conflict-free representation).

■ The court has a responsibility to supervise members of the bar and enforce ethical standards. This vigilance will not only protect litigants from their counsel's ethical violations, but will also enable the court to avoid delays in the smooth functioning of the trial which would be likely to occur if incompetent attorneys are allowed to appear. The ethical rules which the trial judge here perceived to be violated were ABA Code of Professional Responsibility EC 2–30 ("Employment should not be accepted by a lawyer when he is unable to render competent service . . . .") and DR 6–101 ("A lawyer shall not: (1) Handle a legal matter which he knows or should know that he is not competent to handle . . . (2) Handle a legal matter without preparation adequate in the circumstances.")[6]

■ The trial court need not accept the defendant's attempt to waive his right to a counsel who is free of ethical violations.[7]

---

6. During oral argument, it authoritatively came to the court's attention that it was a matter of common knowledge in the trial court that the counsel in question suffered from a serious physical affliction of a nature substantially incapacitating him for court appointment to trial duty, especially for a trial of this gravity.

7. The Supreme Court decision in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) does not lead to a contrary conclusion. The *Faretta* decision was based on

*United States v. Dolan, supra* (upholding trial judge's refusal to accept defendant's waiver of his right to a counsel free of conflict of interest). Normally, the court would hold a hearing to assess the extent of the attorney's ethical violation, the disruption or delay to courtroom procedures caused by unqualified representation, and whether the defendant's attempted waiver is made knowingly and intelligently. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). It is apparent, however, that on the facts of this case, the trial judge could reasonably conclude without a formal inquiry that Mr. Koonin would be unable to surmount his violation of the aforementioned ethical precepts, and, thus, the court did not err in restricting Mr. Koonin's courtroom activities.

*Affirmed.*

NEWMAN, Chief Judge, dissenting:

I believe that the court was correct in *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975), in concluding that "[i]f defendants may dispense with the right to be represented by counsel altogether, ... it would seem that they may waive the right to have their retained counsel free from conflicts of interest," and presumably from other charges of ineffectiveness, at least where a knowing and intelligent waiver is made. Moreover, I believe that appellant has a right to counsel of his choice and that the restrictions imposed by the trial court on appellant's retained counsel rendered that choice meaningless.

There are several rights involved in this case: the defendant's right to retain and be represented by counsel of his own choice, *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); his right to the effective assistance of counsel, *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942); and his right to refuse counsel and to conduct his own de-

fense, provided there is a proper waiver, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). None of these rights are absolute or "preferred", *see Garcia, supra* at 276; each in some way may either be circumscribed or waived.

The right of a defendant to be represented by retained counsel of his choice has long been recognized as an essential element of the general right to counsel guaranteed by the Sixth Amendment. *Powell v. Alabama, supra* at 53, 53 S.Ct. at 58. A defendant, however, may waive his right to counsel and may conduct his own defense if the trial court is satisfied that the waiver is made knowingly and intelligently, and with an awareness of the possible consequences. *Faretta, supra* at 835, 95 S.Ct. at 2541; *Hsu v. United States*, D.C.App., 392 A.2d 972, 981–87 (1978).

With respect to the guarantee of effective assistance of counsel, the recent Supreme Court decision in *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1717–18, 64 L.Ed.2d 333 (1980), states that, absent objection by a defendant, "trial courts may assume either that multiple representation entails no conflict or *that the lawyer and his clients knowingly accept such risks* of conflict as may exist." (Footnote omitted; emphasis added.) The Court noted that attorneys "have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." *Id.* at 346, 100 S.Ct. at 1717 (footnote omitted). Nevertheless, the fact that a potential violation of such an ethical duty might exist did not impinge on the Court's recognition that the lawyer and his client might still knowingly risk the consequences of such a conflict. The Fifth Circuit in fact reached the same result in *United States v. Garcia, supra.* While the Court in *Cuyler* dealt only with one specific type of ineffective assistance, *i. e.* the problem of conflict-

the defendant's independent right to self-representation, not on the absolute right to waive effective assistance of counsel. *Id.* at 819–20 & n.15, 95 S.Ct. at 2533 n.15. "The ability to waive a constitutional right does not ordinarily

carry with it the right to insist upon the opposite of that right." *Singer v. United States*, 380 U.S. 24, 34–35, 85 S.Ct. 783, 789, 13 L.Ed.2d 630 (1965) (right to trial by jury cannot always be waived).

ing representation, the same rationale can be applied to the entire array of ineffective assistance problems.

The Court in *Cuyler* implicitly recognized that though a defendant may be entitled to counsel of his choice, even if that counsel is ineffective, the fact that the defendant has waived *his* right will not necessarily release the lawyer from his own obligations under the professional code. If the lawyer does violate those obligations it is not generally within the purview of the court to forestall him—for the court's primary obligation is to ensure that the defendant's constitutional right to counsel of his own choosing be protected, at least where it is a choice knowingly and intelligently made. Rather, it is for the appropriate Bar committee to decide whether a lawyer has violated his professional obligation and to take the requisite disciplinary actions. *See* D.C.App.R. XI, § 4(3).

I base my conclusion that the defendant's right to counsel of his own choosing may be allowed to predominate over his right to effective assistance on the confluence of several principles. As was enunciated in *Faretta, supra* at 821, 95 S.Ct. at 2534, "[u]nless the accused has acquiesced in such representation [by certain chosen or appointed counsel], the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." (Emphasis in original.) Directly related is the right of the defendant to structure and direct his defense as he himself chooses. *See id.* at 819–20, 95 S.Ct. at 2533. In so doing, the defendant may go so far as to choose to represent himself, though "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834, 95 S.Ct. at 2540. As Mr. Justice Sutherland stated in *Powell v. Alabama, supra* at 69, 53 S.Ct. at 64, *quoted in Faretta, supra* at 833 n.43, 95 S.Ct. at 2540 n.43:

Even the intelligent and educated layman *has small and* sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have [*sic*] a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.

Obviously, an experienced and skilled practitioner of the law, even though totally unfamiliar with the facts of a given case, will in all likelihood be able to provide far more competent assistance than a defendant would otherwise receive by virtue of his own untutored labors. Particularly with respect to questions of evidentiary admissibility, the propriety of the prosecution's opening and closing statements, the types and manner of questions to be asked of witnesses on cross-examination, and the requesting of proper jury instructions, the guiding hand of such counsel should prove to be far more effective than the defendant's own unaided efforts. Since a defendant may constitutionally elect to rely solely upon his own inadequate legal skills in defending himself, there is no reason why he may not elect to retain counsel whose skills—notwithstanding charges of ineffectiveness—are likely to be superior to his own.

In the present case, the defendant was not simply waiving his right to effective assistance of counsel, and thereby attempting to compel the opposite, as the majority suggests in note 7, *supra*, citing *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). Rather, he is waiving one constitutional prerogative while at the same time attempting to fully exercise another, *i. e.*, the right to counsel of his own choice. Where defendant has chosen to ex-

ercise one constitutional guarantee over another and has done so knowingly and intelligently, and where neither of the two rights is a "preferred" right, I would conclude that it is reversible error for the court to refuse to honor his decision. *See Garcia, supra; United States v. Bubar*, 567 F.2d 192, 202–04, 203 n.18 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977).

The majority relies heavily on *United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978), where the defendant sought reversal of his conviction on the grounds of ineffective assistance of counsel due to a conflict of interest resulting from his attorney's representation of both the defendant and his codefendant. While the court upheld the trial judge's refusal to accept the defendant's waiver of his right to counsel free of conflict of interest, it is clear that the court recognized that a waiver *was* possible when made "knowingly, intelligently, and with awareness of the likely consequences of the waiver." *Id.* at 1181. The court also recognized that *absent* such a waiver, the attorney would run the risk of violating his ethical obligations:

> When cases arise in which the judge finds it impossible to elicit and accept a knowing and intelligent waiver from the defendant, it is the obligation of the attorney concerned, as an officer of the court and subject to its supervisory powers, to withdraw from the case.
>
> \* \* \* \* \* \*
>
> Besides breach of the lawyers' ethical code, there are public interests which impel an attorney's withdrawal from representing multiple defendants *absent a knowing and intelligent waiver.* [*Id.* at 1182 (emphasis added).]

Within the factual confines of that case the court determined that Dolan's waiver was insufficient. However, the court also acknowledged that its previous decision in *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973), "still remains the test on direct appeal or collateral attack for determining the validity of a waiver of the effective assistance of counsel in those situations in which waiver would be proper." *Dolan, supra* at 1184 n.12.

Thus, it is clear that the right to retain counsel of one's choice is central to the Sixth Amendment, and, in some circumstances, that right may predominate over the right to effective assistance. In the present case, however, the restrictions imposed by the trial court on appellant's retained counsel rendered appellant's choice meaningless. The court, for example, prohibited, retained counsel from examining jurors or witnesses, from conducting cross-examination, and from making motions or raising objections. Rather, it merely allowed counsel to enter an appearance and to confer with court-appointed counsel.[1]

I believe what Mr. Justice Frankfurter wrote in *Adams v. United States ex rel. McCann*, 317 U.S. 269, 280, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942), ruling that a *pro se* defendant may waive his right to jury trial without assistance of counsel, is equally pertinent to the present question:

> When the administration of the criminal law in the federal courts is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards . . ., and to base such denial on an arbitrary rule that a man cannot choose to conduct his defense before a judge rather than a jury unless, against his will, he has a lawyer to advise him, although he reasonably deems himself the best ad-

---

1. The majority's reliance on *Gressette v. United States*, D.C.App., 256 A.2d 418 (1969), and *United States v. Bragan*, 499 F.2d 1376, 1379 (4th Cir. 1974), is unpersuasive in the instant case since a suspension of the trial was not necessary to effectuate appellant's choice of counsel.

The majority suggests in note 6, *supra*, that it was "common knowledge" that counsel in question suffered from a serious physical affliction, which substantially incapacitated him for trial work. The record below, however, fails to reflect this fact and fails to reflect whether the trial court based its ruling on this matter at all. Moreover, I suggest that it was the severe restrictions imposed by the trial court itself that truly crippled retained counsel.

visor for his own needs, is to imprison a man in his privileges and call it the Constitution.