**110**

UNITED STATES of America

v.

John D. JONES, a/k/a Jack Jones.

Crim. A. No. 82–366.

United States District Court,
E.D. Pennsylvania.

March 31, 1983.

JoAnne A. Epps, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Wallace C. Worth, Jr., Allentown, Pa., for defendant.

## MEMORANDUM

HUYETT, District Judge.

In this criminal matter, defendant John D. Jones a/k/a Jack Jones has been charged with violations of 18 U.S.C. §§ 2315 and 2313. The government alleges that the defendant has received motor vehicles stolen from interstate commerce and that he has sold goods stolen from interstate commerce. Jones is also charged with mail fraud. in violation of 18 U.S.C. § 1314.

The defendant retained the firm of Wallace C. Worth, Jr. to represent him. Before me is the government's motion to disqualify Worth from representing or participating in the representation of the defendant because Worth previously represented a key government witness, Henry Krotzer. I held a hearing and issued my order and decree granting the government's motion. This memorandum constitutes my findings of fact conclusions of law, and statement of my reasons for ruling as I did.

Henry Krotzer testified at the hearing. I found him to be a credible witness. He was candid and answered the questions of counsel in an open and forthright manner.

Henry Krotzer and John Jones had known each other for a period of twenty years. Jones operated Jones' Truck Sales, where he employed Krotzer from approximately 1978 until 1982. Jones bought and sold used tractor trailer and truck parts. Krotzers' employment related to this operation. Krotzer left Jones' employ after the events described below.

On September 28, 1982, Krotzer was arrested on state charges, which included receiving stolen property, unauthorized use of a motor vehicle, conspiracy and falsification of an identification number. Jones was named in the state charges as a co-conspirator. Following his arrest, Krotzer voluntarily agreed to provide information to the FBI concerning Jones. Jones was indicted by a federal grand jury on the present federal charges on November 9, 1982. One vehicle, an International Harvester tractor, identification number D4227HHA10108, forms the basis for one of the three state charges against Krotzer and counts 3 and 4 of the federal indictment against Jones.

Worth's representation of Krotzer preceded Krotzer's arrest in September. In June, 1982, pursuant to a state search warrant, Krotzer's trucks were searched and impounded by Pennsylvania State Police. Krotzer discussed the matter with Jones, his employer. Jones told Krotzer that if the Pennsylvania State Police were to arrest him as a result of the search, he should call Worth and Jones immediately. This was the second time that Jones arranged to have Worth represent Krotzer in matters relating to Krotzer's business activities with Jones.

The first time that Worth was hired by Jones to represent Krotzer involved the repossession of a truck which Jones told Krotzer he would attempt to get returned to him. To effect this return, Jones told Krotzer he had retained Wallace Worth, who had represented Jones on several prior occasions over a two-year period. As he was instructed by Jones, Krotzer went to Worth's office to sign papers in blank in connection with Worth's efforts to have the truck returned. He did not speak to Worth on that occasion.

Upon his arrest on September 28, 1982, Krotzer asked his wife to call Jones and have Jones contact Worth, as was prearranged. When Krotzer arrived at the police station, he received a call from Worth, who advised him to remain silent. Krotzer was released on his own recognizance.

After his release, Krotzer went to discuss the matter with Jones. According to Krotzer, Jones instructed him not to tell anyone what he knew about the allegations contained in the state complaint, or of Jones alleged involvement in the events stated in the charges. Following their conversation, Jones took Krotzer to the office of Worth.

Present at the meeting were Wallace Worth, Diane Dixon, Esquire, Worth's associate, Krotzer and Jones. Worth asked Krotzer whether he knew anything about the charges against him. Krotzer responded that he knew about the Lincoln automobile mentioned in one of the complaints. According to Krotzer, as he began to explain, he was interrupted by a "dirty look" from Jones, which reminded him of Jones' alleged prior warning not to admit knowledge of the events to anyone. Worth continued to question Jones and Krotzer about various cars, trucks and parts mentioned in the complaint. Jones answered Worth's questions regarding the items, explaining

how he and Krotzer acquired them, and Krotzer agreed with Jones' explanations. Although he now states that he believed Jones was not being truthful in his responses, Krotzer states that he did not object because of Jones' warning not to reveal to anyone his knowledge of the alleged events.

As the meeting ended, Worth agreed to represent Krotzer at the preliminary hearing on the charges. Jones agreed to pay Worth for all of Krotzer's legal expenses. Jones and Jones' wife accompanied Krotzer to the first hearing, on two of the three state charges, held on October 6, 1982 before Magistrate James Stahl. Worth was also present. Krotzer believed Worth was acting as his attorney and would represent his interest. At the hearing testimony was given by several witnesses. Some of the witnesses' testimony incriminated Jones, as well as Krotzer, in the alleged activities. Throughout the hearing Worth acted as if he were representing the interests of both Jones and Krotzer. He vigorously cross-examined the witnesses about Jones. Although Jones was not a defendant at the hearing, Worth objected when some testimony was elicited regarding Jones.

Prior to the second preliminary hearing, which was held on November 19, 1982, Krotzer went to the Lehigh County Public Defenders' office to seek another attorney because he felt he could not trust either Jones or Worth. Krotzer stated that he had overheard a telephone conversation by Jones regarding truck parts in which Jones told the caller he had acquired the parts from Henry Krotzer. Krotzer believed Jones was trying to place the blame for a stolen motor on him, by saying he purchased it from Krotzer, when this was not in fact true. Additionally, Krotzer stated that he had become uneasy because of the statements that Jones made to Worth at the meeting on September 29, 1982 about Krotzer's involvement in the activities underlying the state charges. Krotzer stated that he believed that Worth could not defend both of them. Krotzer feared that because Jones was paying Worth, and Worth had represented Jones in other mat-

ters, Worth would represent Jones more diligently than he would represent Krotzer.

Worth attempted to contact Krotzer to prepare for the second preliminary hearing on November 19, 1982, however, he did not speak to Krotzer prior to that hearing. Krotzer arrived at the hearing with two attorneys from the Public Defenders' office. At the hearing, Krotzer told Worth that he no longer wanted Worth to represent him.

On November 9, 1982, the federal grand jury returned the present indictment against John Jones.

The government contends that the continued representation of Jones by Worth would be improper because of an actual or apparent conflict of interest. It asserts that Worth may be forced to reveal a confidential communication by Krotzer in his representation of Jones because Worth represented Krotzer in a criminal matter closely related to the federal charges now pending against Jones. The government further asserts that Worth's former relationship with Krotzer will make it impossible for him to represent Jones with the independence of judgment required by the sixth amendment.

The defendant argues that no conflict of interest is present because no confidential communication took place ever between Worth and Krotzer. The defendant also contends that Jones' presence in Worth's office during the meeting between Krotzer and Worth precludes such a finding.

■ Conversations between a client and his attorney are not privileged where there is a non-essential third-party present. *Johnson v. United States,* 542 F.2d 941, 942 (5th Cir.1976), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1559, 51 L.Ed.2d 780 (1977); C. McCormick Evidence § 91, at 188 (2d ed. 1972). It does not follow from this rule of law, however, that the presence of a third-party necessarily vitiates the attorney-client privilege. For example, the presence of employees of the attorney does not destroy the confidentiality of the conversation. *See United States v. United Shoe*

*Machinery Corp.,* 89 F.Supp. 357, 358 (D.Mass.1950). Similarly, when two persons accused of a joint criminal undertaking meet with an attorney representing both, the presence of one client should not affect the other client's right to confidentiality. Accordingly, individuals who are alleged to have been involved together in criminal activity must be able to seek legal advice and speak freely with counsel without fear that their disclosures will be used against them in subsequent proceedings.

Jones' presence at the meeting with Krotzer and Worth on September 29, 1982 does not destroy the confidential nature of the meeting and the information disclosed to Worth. Krotzer and Jones each believed that the other was an essential party to this meeting because the subject of the meeting related to their joint activity. Jones and Krotzer had known each other for many years. Krotzer worked for Jones at Jones' Truck Sales for several years prior to his arrest. The allegations in the state complaint related to Krotzer's and Jones' business activities. Although he had not been arrested on state charges at that time, Jones was named as a co-conspirator in the state charges filed against Krotzer. It is apparent that Jones and Krotzer believed themselves to be implicated together in the events. The present federal indictment of Jones refers to one of the same vehicles which formed the basis of the state charges against Krotzer. Additionally, Jones stated that he had an interest in two of the trucks impounded as a result of Krotzer's arrest. The circumstances of the first preliminary hearing also demonstrate that all parties believed that Jones and Krotzer were implicated together, and were presenting one defense. Jones accompanied Krotzer to the state preliminary hearing, at which Worth acted as if both Krotzer and Jones were his clients. By his cross-examination of the witnesses he not only protected Krotzer's interests, but Worth also challenged testimony which appeared to implicate Jones.

Additionally, Jones and Krotzer each understood that Worth was representing both of them. Krotzer knew Worth was Jones' attorney. Jones had arranged for Worth to represent Krotzer. Jones advised Krotzer what to do if he was arrested and how to handle his defense. Krotzer believed that Worth was his attorney and would protect his interests. He also expected that the disclosures made would not be revealed to anyone not present at the meeting. I conclude that a confidential relationship existed between Worth and Krotzer.

The defendant also contends that Krotzer disclosed no confidential information to Worth. Upon Worth's initial questions to Krotzer at the meeting on September 29, 1982, Krotzer told Worth that he had knowledge of the allegations contained in the complaint regarding one of the automobiles, a white Lincoln. Following this statement, Krotzer permitted Jones to respond to Worth's questions and communicated to Worth his assent to Jones' responses. This conduct by Krotzer constitutes confidential communications to Worth.

■ In *United States v. Flanagan,* 679 F.2d 1072 (3d Cir.1982), *cert. granted,* 459 U.S. 1101, 103 S.Ct. 721, 74 L.Ed.2d 948 January 10, 1983, our court of appeals held that where an actual conflict of interest is very likely to materialize, disqualification of defense counsel is an appropriate measure. *Id.* at 1076. While *Flanagan* involved the joint representation of co-defendants by one firm, I believe that the facts of this case are analogous to those in *Flanagan.* In this case Worth has, in effect, represented two persons allegedly involved in a joint undertaking which has resulted in criminal charges. Even though Jones had not been formally charged by the state, he was named as a co-conspirator throughout the state charges against Krotzer. Those state charges are very closely related to the federal charges now pending against Jones.

I am gravely concerned that a conflict of interest is very likely to arise in this case, either at trial or before trial during plea bargaining, because of Worth's representation of Krotzer. Because a conflict is very

likely to materialize during these proceedings, Worth must be disqualified as Jones' attorney. The fact that Krotzer subsequently retained other counsel does not preclude Worth's disqualification. A serious potential for conflict is still present. *See United States v. Garafola,* 428 F.Supp. 620, 622–23 (D.N.J.1977), *aff'd sub nom. United States v. Dolan,* 570 F.2d 1177 (3d Cir.1978). The government has stated that it intends to call Krotzer as a government witness at trial. Because of his employment by Jones, his alleged involvement in the events and his knowledge of the items contained in the charges, Krotzer will be an important government witness in its trial against Jones. It appears to me that Worth cannot effectively cross-examine Krotzer in light of their prior confidential relationship. Mr. Worth cannot ask Krotzer questions on cross-examination regarding any of the confidential disclosures he made during Krotzer's meeting with Jones and Worth on September 28, 1982 without touching upon matters protected by the attorney-client privilege. As his testimony at the hearing demonstrated, Krotzer is likely to testify to facts different from those related to Worth by Krotzer and Jones at the meeting on September 28, 1982. While Krotzer now states that he believed the information provided by Jones at the meeting to be false, he did not tell Worth this. Krotzer now explains that his failure to disagree with Jones was based upon alleged prior warnings from Jones and a threatening look by Jones at the meeting. Worth would be faced with a former client testifying to facts inconsistent with those disclosed to him in a confidential communication. Worth would be tempted to use the prior inconsistent statements made by Krotzer when he assented to Jones statements at the meeting to impeach Krotzer, in an effort to zealously defend Jones. It is also possible that Worth, aware of his obligation to his former client, would overcompensate and be less than zealous in his cross-examination of Krotzer thereby denying Jones his sixth amendment right to effective assistance of counsel. *See, United States v. Garafola,* 428 F.Supp. 620 (D.N.J.1977), *aff'd sub nom. United States v. Dolan,* 570 F.2d 1177 (3d Cir.1978).

Despite Jones' present desire to have Worth represent him at this criminal trial, Jones, if convicted, may later become dissatisfied with Worth's representation and move for a new trial, alleging he was denied effective assistance of counsel. If Worth were permitted to continue as Jones' counsel, any plea agreement reached with the government might also be vulnerable to a subsequent attack by Jones on the same grounds. Jones could challenge any such agreement on the ground that it was the result of possible pressure on Jones or Worth to plead guilty rather than go to trial, at which a conflict of interest would crystallize.

My decision does not abrogate Jones' sixth amendment rights. While the sixth amendment grants a criminal defendant the unqualified right to assistance of counsel, it does not provide him with an absolute right to the counsel of his choice. *Davis v. Stamler,* 650 F.2d 477 (3d Cir. 1981). A criminal defendant's right to be represented by the counsel of his choice must be balanced against the public's interest in a fair criminal proceeding, free from future attacks. *See United States v. Flanagan,* 527 F.Supp. 902, 906 (E.D.Pa.1981), *aff'd,* 679 F.2d 1072 (3d Cir.1982), *cert. granted,* 459 U.S. 1101, 103 S.Ct. 721, 74 L.Ed.2d 948 (1983). This is not a case in which the nature of the conflict is highly speculative. I have carefully considered the circumstances of this case and find that an actual conflict of interest is very likely to arise before the end of the defendant's trial. The sixth amendment guarantees all criminal defendants "the assistance of counsel for his defense." Such assistance must be "untrammeled and unimpaired." *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942). If Worth continued to represent the defendant, it is likely that a conflict of interest would arise during the trial proceedings, and therefore the defendant would not receive independent assistance

of counsel as required by the sixth amendment.

For the reasons stated above, I concluded that Worth's continued representation of Jones is very likely to lead to an actual conflict of interest in this case. Worth must, therefore, be disqualified from representing the defendant. Accordingly, I granted the government's motion.