UNITED STATES of America

v.

Dean Martin ARNOLD.

Criminal No. 95–00153–01.

United States District Court,
E.D. Pennsylvania.

May 4, 1995.

Michael Schwartz, Asst. U.S. Atty., Philadelphia, PA, for government.

Richard J. Makoul, Allentown, PA, for defendant.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

### BACKGROUND

This matter is before the court for a proceeding under Fed.R.Crim.P. 44(c) to determine whether Richard J. Makoul, Esquire, should be disqualified from representing defendant Dean Martin Arnold because of his prior representation of one Jennifer Kloss, who will be a witness in this case. The government filed a motion on April 27, 1995 to disqualify Mr. Makoul and after notice to counsel, a hearing was held before the court on Thursday, May 4, 1995. At the hearing, Jennifer Kloss objected in strong terms to Mr. Makoul's representation of Dean Martin Arnold.

On April 11, 1995, a federal grand jury returned a Superseding Indictment in the instant case charging Dean Martin Arnold with bank larceny, in violation of 18 U.S.C. § 2113; money laundering, in violation of 18 U.S.C. § 1956; witness tampering, in viola-

tion of 18 U.S.C. § 1512(b)(3); and attempted murder of a witness, in violation of 18 U.S.C. § 1512(a)(1)(A). These charges arise from Arnold's alleged theft of approximately $465,000 in cash between December 1993 and August 23, 1994 while employed as an armored car guard at Federal Armored Express, Allentown, Pennsylvania.

The superseding indictment alleges that in December 1993, and August 1994, defendant Arnold stole approximately $465,000 belonging to two federally insured banks. Arnold is also charged with threatening Jennifer Kloss, who is his ex-fiancee, by choking her and putting a gun to her head. This was allegedly done to prevent her from advising the police and the FBI about her knowledge of Arnold's involvement in the thefts. The grand jury also charged that Arnold attempted to kill Kloss to prevent her from testifying against him at trial.

On August 23, 1994, FBI agents and local police went to the house trailer where Jennifer Kloss and Dean Martin Arnold lived in an effort to interview them about the disappearance of $400,000 from Federal Armored Express. Jennifer Kloss and Dean Martin Arnold were living together and were engaged to be married. The agents were unable to interview either Kloss or Arnold at that time. The next day, Jennifer Kloss spoke with her father, Joseph Kloss, about the incident and the need for a lawyer. Joseph Kloss became concerned about his daughter becoming implicated in the disappearance of the money and the possible involvement of her fiancee, Dean Martin Arnold. Joseph Kloss contacted the office of Richard J. Makoul, Esquire, about legal representation.

A $1,000 check was given to Dean Martin Arnold and Jennifer Kloss by Mr. Joseph Kloss so that they could retain counsel. This check was endorsed by Dean Martin Arnold and Attorney Richard Makoul as a retainer fee (Government's Hearing Exhibit #1). Additional fees were also paid. The $1,000 fee was paid on August 25, 1994, at which time Joseph Kloss, Jennifer Kloss and Dean Martin Arnold attended a meeting with Mr. Makoul in his office. During the course of this meeting, which lasted approximately one hour, Mr. Makoul provided legal advice to Jennifer Kloss in the presence of both Mr. Kloss and Jennifer Kloss. During the meeting, Mr. Makoul asked Mr. Kloss to leave the room so he could speak privately with Jennifer Kloss and Dean Martin Arnold. During this private consultation, Jennifer Kloss and Dean Martin Arnold made confidential communications to Mr. Makoul and Mr. Makoul gave them legal advice. Mr. Makoul was of the view that the situation primarily concerned Dean Martin Arnold, but could also involve Jennifer Kloss.

As a result of her meeting with Mr. Makoul and his statements to her, Jennifer Kloss believed Mr. Makoul represented her in connection with the FBI investigation and when she met with the FBI on December 20, 1994 she informed them that she was represented by Mr. Makoul (Government's Hearing Exhibit #3). In addition, Mr. Makoul also advised FBI Special Agent Thomas Fry, the case agent in this investigation, that he represented both Jennifer Kloss and Dean Martin Arnold and requested that the FBI not interview either of them.

By December of 1994 the relationship between Dean Martin Arnold and Jennifer Kloss had apparently come to an end and their engagement was broken. Mr. Joseph Kloss wrote a letter, (Government's Hearing Exhibit #6), bringing this to the attention of Mr. Makoul and stating that he would no longer provide financial help for Dean Martin Arnold.

## LEGAL STANDARD

The applicable law is well-known. A criminal defendant is entitled to reasonably effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, *see e.g.,* Fed. R.Crim.P. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

■ "The Sixth Amendment guarantee of effective assistance of counsel includes two corrective rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir.), *cert. denied*, 501 U.S. 1211, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991) (internal citations omitted). The duty not to reveal information relating to representation of a client continues after the client-lawyer relationship has terminated. 204 Pa.Code § 81.4 (Rule 1.6(d)), *Moscony*, n. 7.

The duty imposed on counsel is not limited to situations in which the prior and present clients are co-defendants. In *United States v. Montevecchio*, 645 F.Supp. 497 (W.D.Pa. 1986), *aff'd mem.*, 829 F.2d 33 (3d Cir.1987), the court disqualified a defense lawyer who had represented two government witnesses on prior matters which were unrelated to the case before the court. This was done even though the two witnesses were willing to waive the conflict.

■ "There is no absolute right to particular counsel where there is an actual conflict of interest." *United States v. Provenzano*, 620 F.2d 985, 1004 (3d Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *see also United States v. Dolan*, 570 F.2d 1177, 1183 (3d Cir.1978). "Not only when an actual conflict is found, but when there is a showing of a serious potential for conflict [citing authority] the presumption in favor of a defendant's counsel of choice is overcome and the trial court may disqualify counsel and reject the defendant's waiver of conflict." *Moscony*, 927 F.2d at 750.

### DISCUSSION

■ We established at the hearing that Jennifer Kloss would not consent to Mr. Makoul representing Dean Martin Arnold and that she objected to this representation in strong terms. We were unable to ascertain the exact nature of the objections because of the attorney-client privilege which she refused to waive. Jennifer Kloss, nevertheless, made it clear that Mr. Makoul had represented her and we believe that there is sufficient evidence in the existing record to require that Mr. Makoul not represent Arnold.

Jennifer Kloss is expected to testify at trial about the threats made by Arnold to kill her and her knowledge of Arnold's involvement in the theft of the money. The government anticipates that she will testify that Arnold admitted to her that he stole the money and that Arnold had threatened to kill her if she told the police or the FBI about her knowledge of his involvement. Mr. Makoul, therefore, will be required to properly cross-examine his former client, Jennifer Kloss. This cross-examination may very well include asking Jennifer Kloss about confidential communications made while she was meeting with Mr. Makoul. It may include cross-examining Kloss about whether or not she told Mr. Makoul about the prior threats made to her by Dean Martin Arnold and about her knowledge of his alleged involvement in these threats or other crimes. We will not permit Mr. Makoul to assert to the court that no information of value in cross-examination was imparted to him because this would violate the attorney-client privilege. Most attorneys keep notes of meetings with their clients. Nevertheless, even if we were to accept Mr. Makoul's representations that he cannot remember any information being imparted which would be useful in cross-examination of Jennifer Kloss, we will not accept such a statement at this time does not serve to alleviate possible conflict because that situation could change.

It is clear that Mr. Makoul did represent both Jennifer Kloss and Dean Martin Arnold in connection with the subject matter for which Dean Martin Arnold is charged in the indictment. We are aware that both Jennifer Kloss and Dean Martin Arnold were present with Mr. Makoul but this did not prevent the attorney-client privilege from arising. "Communications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interest." *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir.), *cert. denied, Wasserstrom v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). Furthermore, Mr. Kloss' state of mind in writing a letter in

December 1994 about Mr. Makoul's continued representation of Dean Martin Arnold does not control whether Mr. Makoul represented Jennifer Kloss prior to that in August 1994. As the facts demonstrate, both the attorney and clients, Jennifer Kloss, Dean Martin Arnold, and Richard Makoul, believed at that time that Mr. Makoul did represent them and they acted accordingly.

Mr. Makoul owes a continuing duty of loyalty to his prior client, Jennifer Kloss, and he also owes a duty of loyalty to his present client, Dean Martin Arnold. Mr. Makoul is in the untenable position of having to keep the confidences of both Kloss and Arnold and, at the same time, serve them properly. In advising Arnold whether or not to plead guilty or go to trial, Mr. Makoul must be able to give advice free of continuing obligations to Jennifer Kloss. We cannot begin to project all of the possible conflicts which might arise and we fail to see how an effective and knowing waiver could be obtained with the strong objections voiced by Jennifer Kloss.

An appropriate order follows.

### ORDER

AND NOW, this 4th day of May, 1995, after a hearing in open court on May 4, 1995, the motion of the government to disqualify counsel filed April 27, 1995 is hereby GRANTED and Richard J. Makoul, Esquire, is removed from further representation of the defendant Dean Martin Arnold. Mr. Makoul is directed to return all counsel fees, less costs, to the defendant Dean Martin Arnold which have been paid subsequent to his initial $5,000 retainer and to forward any necessary file documents and information to defendant's new counsel. Mr. Makoul is further directed to keep in confidence all confidential information imparted to him by Jennifer Kloss under the attorney-client privilege.